UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHANNON CAMPBELL AND MARK ENNIS, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>FELD ENTERTAINMENT INC., et al, )<br>)<br>Defendants. )<br>_____ ) | Case No.: 12-CV-4233-LHK<br><br>ORDER DENYING PLAINTIFFS'<br>MOTION FOR PRELIMINARY<br>INJUNCTION |

Plaintiffs Shannon Campbell ("Campbell") and Mark Ennis ("Ennis") (collectively "Plaintiffs"), who are animal rights activists, jointly move for a preliminary injunction to enjoin Defendants Feld Entertainment, Mike Stuart, David Bailey, James Dennis, Matthew Gillet, and Does 1 through 20 (collectively, "Defendants"), who operate Ringling Bros. and Barnum & Bailey Circus. Plaintiffs seek to prevent Defendants and their employees from engaging in activities that Plaintiffs assert will interrupt their protests and documentation of Defendants' mistreatment of animals.[1] The Court held a hearing on the motion on August 15, 2013. Because time is of the essence, the Court does not engage in a lengthy analysis of the issues. For the reasons stated below, Plaintiffs' request for the preliminary injunction is DENIED.

---

[1] Although originally filed separately, the Court consolidated Ennis' and Campbell's cases and their requests for preliminary injunction. *See* ECF No. 70.

1    **I.      BACKGROUND**

2              Plaintiffs are members of Humanity Through Education ("HTE"), an animal rights activism

3    group that protests the treatment of animals at circuses like the ones Defendants operate.  Second

4    Am. Consol. Compl. ("Compl.") ¶ 16; Ennis Decl. ¶ 3; Campbell Decl. ¶ 3.  At the circus fora, the

5    members of HTE, including Plaintiffs, hold signs and banners and offer informational leaflets

6    about the condition and treatment of animals, such as Asian elephants, that perform in the circuses.

7    Compl. ¶ 16; Ennis Decl. ¶ 3; Campbell Decl. ¶ 5.  HTE members also videotape the treatment of

8    the animals with the purpose of educating the public about that treatment.  Compl. ¶ 16; Ennis

9    Decl. ¶ 13; Campbell Decl. ¶ 6.  Campbell has been leafleting patrons of the circus for six years

10   and videotaping its treatment of animals for five years.  Compl. ¶ 20; Campbell Decl. ¶ 3.  Ennis

11   has been engaged in protest activities for many years.  Compl. ¶ 21; Ennis Decl. ¶ 9.

12             Defendants' circus generally comes to the San Francisco Bay Area every August and

13   September, and they typically perform one evening show per day during the week and two or three

14   shows each weekend day.  Compl. ¶ 24; Ennis Decl. ¶ 11.  Two or three days before the first

15   performance, Defendants bring the animals via railroad to the city in which they are performing

16   and then walk the animals from the railroad to the forum.  Compl. ¶ 25; Ennis Decl. ¶ 12.

17   Defendants reverse the process after the last performance.  Compl. ¶ 25; Ennis Decl. ¶ 12.  In

18   between, the animals are kept in a compound that often is set up in the parking lot of the arena in

19   which the circus is appearing.  Compl. ¶ 26; Ennis Decl. ¶ 14.  Plaintiffs and other members of

20   HTE videotape the animals during the walks to and from the railroad and while the animals remain

21   in the compound.  Compl. ¶ 27; Ennis Decl. ¶¶ 13, 14; Campbell Decl. ¶ 6.

22             Plaintiffs assert that for the past several years, circus personnel have harassed them and

23   interfered with their ability to videotape the animals.  Compl. ¶ 28; Ennis Decl. ¶¶ 15, 19-26;

24   Campbell Decl. ¶ 7.  Ennis complains that Defendants' employees and arena security have

25   physically assaulted him and attempted to block his videotaping.  Compl. ¶ 29; Ennis Decl. ¶¶ 20,

26   25-26, 28.  Ennis alleges that Defendants' employees have thrown objects at him, hit his camera,

27   and pushed him.  As a result he fears for his personal safety.  Compl. ¶ 32; Ennis Decl. ¶¶ 28, 30,

28   34-35.  Ennis specifically alleges that during an encounter in July 2012 in Fresno, California,

*United States District Court*
*For the Northern District of California*

2

1   employees threw "a plastic bottle, a handful of ice cubes and two wooden sticks" at Ennis and a
2   fellow protestor.  Compl. ¶ 47; Ennis Decl. ¶ 28.  Campbell claims that Defendants' employees
3   have shined laser pointers and strobe lights into her camera lens and directly into her eyes in their
4   efforts to prevent her from videotaping, including in August 2010 in Oakland, California and in
5   San Jose, California.  Compl. ¶¶ 31, 45.  She asserts that as a result she cannot continue to
6   videotape the animal treatment because she fears damaging her eyes.  *Id.*

7          Plaintiffs complain that beginning in 2006 "and to the present" Defendants' employees hold
8   a long rope alongside the animals as the animals are being walked from the railroad to the forum.
9   Compl. ¶ 33; Ennis Decl. ¶ 19.  According to Plaintiffs, Defendants' employees use the rope to
10  interfere with their protests and their videotaping of the animal walk by wrapping the rope around
11  Plaintiffs, pushing the rope into Plaintiffs as they walk on the sidewalk, and hooking the rope under
12  Plaintiffs' monopods for their video cameras.  Compl. ¶ 33; Ennis Decl. ¶¶ 19, 23, 25-26;
13  Campbell Decl. ¶¶ 7, 12, 15.  Plaintiffs assert that as a result they must redirect their attention from
14  their protest and videotaping activities to "monitoring the actions of the employees holding the
15  rope" and "repeatedly telling the Circus employees to stop harassing them with the rope."  Compl.
16  ¶ 40; Ennis Decl. ¶¶ 34-35; Campbell Decl. ¶ 8.  Campbell claims that she was injured by rope
17  burn on her hands when she tried to move the rope away from her body and the employees pulled
18  the rope tighter.  Compl. ¶ 41; Campbell Decl. ¶ 15.  Campbell claims that during an August 2012
19  animal walk, Defendants' employees forced her off the paved road and to climb over a barricade,
20  resulting in bruising on her leg that persisted for a month.  Compl. ¶ 75; Campbell Decl. ¶¶ 12-13.
21  Plaintiffs also claim that during the animal walks, Defendants violate the restrictions imposed by
22  the municipal permits Defendants obtain to walk the animals in public streets.  Compl. ¶ 38.
23  Plaintiffs point to specific encounters in Stockton, California in September 2007; in Oakland,
24  California in August 2009; and in Daly City, California in August and September 2011.  At those
25  encounters, Defendants' employees used the rope to interfere with Plaintiffs' videotaping of the
26  animal walk.  Compl. ¶ 43.

27          Defendants dispute this characterization of the encounters between their employees and
28  Plaintiffs.  Defendant Mike Stuart ("Stuart") asserts that the rope, which is "made of nylon twine"

3

and "about the diameter of a thumb," is used "to create a visible buffer zone to keep the public at a safe distance so that they can watch the animal walk without getting too close to the animals." Stuart Decl. ¶ 11.  According to Defendant David Bailey ("Bailey"), Plaintiffs and other animal activists, not circus employees, created disturbances as Plaintiffs and the other activists moved "closer and closer" to the rope barrier, and "shout[ed], push[ed], and elbow[ed]" various circus employees who were holding the ropes."  Bailey Decl. ¶ 6.  Bailey further asserts that the activists' activities "created the risk of an unsafe environment for everyone present."  *Id.*  Jonathan Miller ("Miller"), the animal superintendent for the circus's Red Unit, states that during an animal walk activists pushed a security guard "out of the way in order to keep following the animals."  Miller Decl. ¶ 7.  Miller also states that he observed other protestors associated with Plaintiffs shove and push circus employees.  Miller Decl. ¶ 9.

On August 7, 2012, in Oakland, California, Plaintiffs sought to videotape the animal walk, which Defendants advertised as an opportunity for the public to view the animals.  Compl. ¶ 51; Leigh Decl. Exs. I, J.  As Campbell attempted to videotape the animals, Defendants' employees, including Stuart and Bailey, used "the ropes and their bodies to attempt to block" Campbell from videotaping.  Compl. ¶ 52; Campbell Decl. ¶¶ 9-13.  After Stuart physically blocked Ennis from entering the arena parking lot, Ennis told Stuart that the lot was "publicly owned and open to the public."  Compl. ¶ 53; Ennis Decl. ¶ 29.  Plaintiffs claim that Stuart used his size to physically intimidate them and in fact made contact with them in an effort to prevent their protests.  Compl. ¶ 53; Ennis Decl. ¶ 30; Campbell Decl. ¶ 12.  On August 8, 2012, Ennis was protesting at the HP Pavilion in San Jose, California, when one of Defendants' employees – whom Ennis knew was an employee from his badge – "purposely walked into" Ennis while he was videotaping from a public sidewalk.  Compl. ¶ 59; Ennis Decl. ¶ 31.

Plaintiffs claim that Defendants and their employees were motivated by Plaintiffs' political beliefs and an intent to prevent them from exercising their speech rights.  Compl. ¶¶ 76, 77; Ennis Decl. ¶ 38; Campbell Decl. ¶ 7.  Plaintiffs assert that as a result of Defendants' actions, Plaintiffs have suffered emotional distress, including severe stress, anxiety, depression, and loss of sleep, and the distress has been cumulative.  Compl. ¶ 78; Ennis Decl. ¶ 39; Campbell Decl. ¶ 16.  Plaintiffs

4

further claim that Defendants' actions cause them to fear for their safety and for damage to their property.  Compl. ¶ 74; Ennis Decl. ¶ 36.

From these factual allegations, Plaintiffs each assert several causes of actions.  Campbell brings nine causes of action: (1) unlawful business practices that violate Cal. Bus. & Prof. Code § 17200; (2) violations of the Ralph Act, Cal. Civ. Code § 51.7; (3) violations of Article I, § 2(a) of the California Constitution; (4) violations of the Bane Act, Cal. Civ. Code § 52.1; (5) claims under Cal. Civ. Proc. Code §§ 527.6(a), (b); (6) intentional infliction of emotional distress ("IIED"); (7) negligent supervision; (8) assault; and (9) battery.  Ennis brings six causes of action: (1) violations of the Ralph Act, Cal. Civ. Code § 51.7; (2) violations of Article I, § 2(a) of the California Constitution; (3) violations of the Bane Act, Cal. Civ. Code § 52.1; (4) claims under Cal. Civ. Proc. Code § 527.6(a), (b); (5) negligent supervision; and (6) battery.

On July 15, 2013, Plaintiffs filed their joint motion for a preliminary injunction against Defendants, in which they initially requested the court to enjoin Defendants and their employees in the following ways:

(1)     Ringling employees shall not extend the boundaries of the animal walk, as delineated by the ropes held by the rope handlers or the bodies of the rope handlers, beyond the confines of the street;

(2)     Ringling employees must, at all times, maintain a safe passageway of at least three (3) feet along the sidewalks or within the street (where there are no sidewalks wide enough to accommodate) so that Plaintiffs and other members of the public can safely move unencumbered along a paved surface during the animal walks;

(3)     Ringling employees shall not force Plaintiffs and other members of the public onto unpaved shoulders of the roads where there is no sidewalk;

(4)     Ringling employees must hold the ropes between their bodies and the animals rather than between their bodies and the public;

(5)     Ringling employees be [sic] prohibited from making contact with Plaintiffs and other members of the public through the use of ropes or any other instrumentality during the animal walks;

(6)     Ringling must apply for and receive appropriate permits prior to conduct[ing] the animal walks; and

Case No.: 12-CV-4233-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
For the Northern District of California

(7)     Ringling employees must adhere to the pertinent municipal code restrictions related to its conduct of the animal walk parades through the streets of the various locations where these events take place.

Prelim. Inj. Mot. at 1-2; ECF No. 25.  They requested that the injunction apply at several locations and on several dates: (1) August 15-19, 2013 in Oakland, California; (2) August 21-26, 2013 in San Jose, California; (3) August 29 to September 2, 2013 in Daly City, California; (4) September 13-16, 2013 in Sacramento, California; and (5) September 20-22, 2013 in Stockton, California. Prelim. Inj. Mot. at 1 n.1.  Defendants filed their opposition to the motion on July 29, 2013.  ECF No. 84.  Plaintiffs filed their reply on August 5, 2013.  ECF No. 88.

In support of their respective positions, the parties each offered declarations from participants in the animal walks.  They also offered video evidence from encounters between Plaintiffs and Defendants' employees during the formal animal walks between the railroad stations and the arenas.  Campbell Decl. Exs. A, B; Laddon Decl. Ex. A.

## II.     PLAINTIFFS' REVISED PRELIMINARY INJUNCTION REQUEST

Following the hearing on this motion and further discussions between the parties, Plaintiffs notified the Court that Plaintiffs now seek an injunction of different scope.  ECF No. 97.  Because Defendants are not engaging in formal "animal walks" this year, Plaintiffs seek only an injunction during the circus performances in San Jose on August 21-26, 2013.  *Id.*  According to Plaintiffs, Defendants' employees walk the animals along a public street between the compound where the animals are housed and the arena where they perform (referred to at the hearing as "informal walks").  Reply at 6-7.  In their subsequent request, Plaintiffs seek to enjoin Defendants and their employees to "stay off the public sidewalk and confine their activities to the street"; hold the rope between the employees and the animals, rather than between the employees and Plaintiffs; and where there is no sidewalk, provide Plaintiffs a three-foot buffer zone within which to film the animals as they walk by.  ECF No. 97.  Defendants oppose this request on the grounds that Plaintiffs did not raise their objections to the informal walks until their reply brief.  ECF No. 98.  Defendants also assert that they do not use ropes during the informal walks.  *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   LEGAL STANDARDS

A preliminary injunction is an extraordinary remedy, never granted as a matter of right. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20. The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F. 3d 1196, 1201 (9th Cir. 2009). The issuance of a preliminary injunction is at the discretion of the district court. *Cottrell,* 632 F.3d at 1131. In cases where the moving party "seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

The Court does not adopt the sliding scale standard set forth by the Ninth Circuit in *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011). In *Cottrell*, the Ninth Circuit found that the following standard for granting preliminary injunctions remained viable after *Winter*: when "serious questions going to the merits and a balance of hardships [] tips sharply toward the plaintiff . . . so long as plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. The Court finds, however, that this "serious questions" standard is in tension with *Winter* and prior Ninth Circuit case law rejecting any earlier standards that are lower than the standard in *Winter*. *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (holding that "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable" and specifically citing case law employing the "serious questions" standard). The Court therefore addresses only the *Winter* factors.

### IV.   DISCUSSION

Plaintiffs have accepted Defendants' representation that they are not performing the formal "animal walks" in the Bay Area this year, and as a result, Plaintiffs have substantially narrowed their injunction request. To that end, Plaintiffs' broader request set forth in their motion for dates

7

United States District Court
For the Northern District of California

spanning August and September of this year and at locations throughout the Bay Area is DENIED moot.

Regarding Plaintiffs' narrowed request, the Court finds that an injunction nevertheless must be denied. Plaintiffs did not raise the issue of informal walks until Plaintiffs' reply brief – a fact Plaintiffs concede. *See* ECF No. 99 (noting that Plaintiffs submitted video evidence of informal animal walks "with their reply"). Because of the untimely addition of this argument, Defendants have not had an opportunity to offer any evidence about the conditions at the informal walks. The Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Plaintiffs' failure to raise the informal walks in their motion is sufficient reason to deny Plaintiffs' new narrow injunction request.

Plaintiffs also have not shown a likelihood of future irreparable harm nor a likelihood of success on the merits of their claims. Plaintiffs' failure to satisfy two of the *Winter* factors is fatal to their request. *Cottrell*, 632 F.3d at 1135 (noting that *Winter* requires "the plaintiff to make a showing on all four prongs").

## A.      Likelihood of Future Irreparable Harm

The evidence Plaintiffs provide does not support the argument that Plaintiffs are likely to suffer future irreparable harm. Plaintiffs argue that Defendants' employees' interference with Plaintiffs' videotaping of the animals is irreparable harm. Plaintiffs further contend that Defendants' employees have engaged in an ongoing campaign to interfere with Plaintiffs' videotaping activities and so Defendants' employees are likely to continue to do so during the San Jose informal walks. Plaintiffs' arguments both fail.

Plaintiffs rely on Section 52.1 to protect their speech activity against interference by Defendants, who are private parties. "The essence of a [Section 52.1] claim is that the defendant, by specified improper means (i.e. 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School District*, 149 Cal. App. 4th 860, 883 (2007) (internal citations omitted). Section 52.1 notably prohibits only interference accompanied by threats, intimidation, or coercion. The

1    irreparable harm at issue in a Section 52.1 claim therefore is not merely interference of speech

2    activity alone, but rather interference through threats, intimidation, or coercion.

3         Plaintiffs heavily rely on Defendants' use of the ropes, which Plaintiffs allege interferes

4    with their speech rights, to show an ongoing irreparable harm that Section 52.1 prohibits.

5    However, Defendants contend that they do not use ropes during the informal walks.  ECF No. 98.

6    As to the use of the ropes generally, even crediting Plaintiffs' claims that the ropes distract

7    Plaintiffs from filming the animals, Plaintiffs have not explained how this conduct amounts to

8    threats, intimidation, or coercion.  A review of the evidence reveals that the employees use the rope

9    as a barrier to keep Plaintiffs and others a certain distance from the animals and at times the rope

10   makes contact with Plaintiffs and others.  *See, e.g.*, Campbell Decl. Exs. A, B; Ennis Decl. ¶¶ 20-

11   26, 29; Campbell Decl. ¶ 14.  A reasonable person would not perceive contact with a rope barrier

12   as an expression of the intent to inflict injury nor would the contact create fear in a reasonable

13   person.  *See McCue v. S. Fork Union Elem. School*, 766 F. Supp. 2d 1003, 1010 (E.D. Cal. 2011)

14   (citing *In re M.S.*, 10 Cal. 4th 698, 710 (1995)) ("For the purposes of the Bane Act, the term

15   'threat' means 'an expression of an intent to inflict evil, injury, or damage to another.'").  Plaintiffs

16   thus have not shown that the use of the ropes amounts to the harm that Section 52.1 prohibits.

17        Plaintiffs points to one incident involving the rope that exceeds using the rope as a barrier.

18   Campbell asserts that during the August 2012 formal animal walk in Oakland, Defendants'

19   employees used the ropes to push her into a barrier.  Campbell Decl. ¶ 13; Campbell Decl. Ex. A.

20   Even if this action amounts to an interference with her speech by threat, intimidation, or coercion

21   that amounts to irreparable harm, it is an isolated incident.  Plaintiffs thus have not shown a

22   likelihood of ongoing future irreparable harm from the use of the ropes.

23        Plaintiffs have presented video evidence and Campbell's and Ennis' respective declarations

24   that reveal confrontations with Defendants' employees.  But based on their own representations,

25   Plaintiffs have attended numerous formal animal walks over many years, and Plaintiffs can point to

26   only a few instances where the encounters with the Defendants resulted in actions coming close to

27   threats, intimidation or coercion.  *See* Ennis Decl. ¶ 9 (describing his "many years" of protesting), ¶

28   28 (describing items being thrown at him in July 2012 in Fresno, California), ¶¶ 30, 31  (describing

9

United States District Court
For the Northern District of California

1  physical touching by Stuart and another employee in August 2012 in Oakland and San Jose,

2  California); Campbell Decl. ¶ 3 (describing her six years of protesting), ¶¶ 12, 13 (describing

3  physical touching by Stuart, Bailey, and another employee in August 2012 in Oakland, California);

4  *see also Ennis v. City of Daly City*, 756 F. Supp. 2d 1170, 1177 (N.D. Cal. 2010) (finding taunting,

5  harassing, chasing, and assaulting plaintiff while he engaged in speech activity sufficed to plead

6  cause of action under Section 52.1).  These examples, while troubling, are insufficient to show that

7  Defendants and their employees are likely to repeat the behavior, especially outside of the formal

8  animal walk context.

9  Most importantly for the injunction request in question, all of the incidents of which

10  Plaintiffs complain occurred during the formal animal walks and not during the informal walks.

11  Defendants dispute even using ropes at the informal walks.  ECF No. 98.  The evidence Plaintiffs

12  offer about the nature of the informal walks during the San Jose performances is Campbell's reply

13  declaration in which she states "Ringling employees also use the ropes on streets used by Ringling

14  to walk animals during circus engagements" including walking the animals "on a day-to-day basis"

15  "down Montgomery and West St. John streets."[2]  Campbell Reply Decl. ¶ 5.  The Court thus has

16  little evidence from which to draw an inference that the interference with Plaintiffs' rights of which

17  Plaintiffs complain with regards to the formal animal walks occurs during the more limited

18  transportation of the animals during the informal walks.  Given the dearth of evidence about the

19  conditions of the informal walks, an injunction at this time is unwarranted.

20  **B.    Likelihood of Success on the Merits**

21  Moreover, in their papers, Plaintiffs primarily discuss the right to access public streets and

22  the right to freedom of speech and assembly, rather than any specific cause of action.  *See* Prelim.

23  Inj. Mot. at 14-18.  At the hearing, Plaintiffs belatedly identified Section 52.1, assault, and battery,

24  and then later Section 527.6 as the bases for their motion for preliminary injunction.

25

26  _____

27  [2] Plaintiffs filed a notice of manual filing of additional video evidence supporting Plaintiffs' argument regarding the informal walks in San Jose, which Plaintiffs raised for the first time in their reply brief.  ECF No. 92.  Plaintiffs did not lodge a copy with the Clerk's office, however, and the Court never received the video evidence.  Regardless, as stated above, the Court need not consider arguments raised for the first time in a reply brief.  *Zamani*, 491 F.3d at 997.

28

10

United States District Court
For the Northern District of California

1   Despite identifying these causes of action and arguing generally that the evidence supports

2   issuing an injunction, Plaintiffs have not offered the Court sufficient explanation connecting

3   Plaintiffs' evidence to the underlying merits of these claims.  While Plaintiffs raise examples of

4   troubling behavior on the part of Defendants, Plaintiffs' motion papers do not discuss Section 52.1,

5   assault, battery, or Section 527.6 at all nor did Plaintiffs explain at the hearing how the *Winter*

6   factors apply to these causes of action.  Plaintiffs thus have not satisfied their burden to show a

7   likelihood of success on the merits of their claims.

8   **V.      CONCLUSION**

9   Plaintiffs fail to meet their burden of showing a likelihood of future irreparable harm.  The

10  Court further finds that even if that deficiency was cured, Plaintiffs have failed to show a

11  likelihood of success on the merits of their claims.  Because Plaintiffs have failed to establish a

12  likelihood of irreparable harm and success on the merits, the Court need not reach the remaining

13  *Winters* factors regarding the balance of the equities and the public interest.  Accordingly, the

14  Court DENIES the preliminary injunction request.

15  **IT IS SO ORDERED.**

16

17  Dated: August 21, 2013

18  LUCY G. KOH
    United States District Judge

11