1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHANNON CAMPBELL AND MARK ENNIS, )<br><br>Plaintiffs,<br><br>v.<br><br>FELD ENTERTAINMENT INC., JAMES<br>DENNIS, MATTHEW GILLETT, MIKE<br>STUART, DAVID BAILEY, DOES 1<br>THROUGH 20,<br><br>Defendants. | Case Nos.: 12-CV-4233-LHK<br>            13-CV-0233-LHK<br><br>ORDER GRANTING-IN-PART AND<br>DENYING-IN-PART FELD<br>ENTERTAINMENT INC., MIKE<br>STUART, AND DAVID BAILEY'S<br>MOTION TO DISMISS PLAINTIFFS'<br>SECOND AMENDED COMPLAINT |

On August 12, 2013, Defendants Feld Entertainment Inc., Mike Stuart ("Stuart"), and David Bailey ("Bailey") (collectively, "Defendants") moved to dismiss the Second Amended Consolidated Complaint ("SAC") brought by Plaintiffs Shannon Campbell ("Campbell") and Mark Ennis ("Ennis") (collectively, "Plaintiffs"). ECF No. 94. On August 30, 2013, Plaintiffs filed an opposition to Defendants' motion. ECF No. 107. On September 6, 2013, Defendants filed their reply. ECF No. 109.

On September 9, 2013, Plaintiff Shannon Campbell moved to supplement the SAC with new factual allegations regarding events arising in August 2013. ECF No. 110. On September 12, 2013, the Court invited the parties to meet and confer regarding Campbell's motion to supplement and to attempt to reach a stipulation regarding the amendment. ECF No. 114. Pursuant to the Court's order, the parties filed a joint status report on September 13, 2013. ECF No. 115. The

parties notified the Court that although the parties had reached agreements regarding Campbell's amendments, those agreements were contingent on the Court's resolution of Defendants' motion to dismiss. *Id.* Plaintiffs also agreed to dismiss Defendants James Dennis and Matthew Gillett. *Id.*

Based on the submissions of the parties and the record in this case, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' motion to dismiss.

## I.      BACKGROUND

The Court draws the following facts from Plaintiffs' Second Amended Consolidated Complaint, which the Court accepts as true for the purposes of determining Defendants' Motion to dismiss. ECF No. 73 (SAC).

Plaintiffs are members of Humanity Through Education ("HTE"), an animal rights activism group that protests the treatment of animals at circuses like the ones Defendants operate. SAC ¶ 16. At the circus fora, the members of HTE, including Plaintiffs, hold signs and banners and offer informational leaflets about the condition and treatment of animals, such as Asian elephants, that perform in the circus. SAC ¶ 16. HTE members also videotape the treatment of the animals with the purpose of educating the public about that treatment. SAC ¶ 16. Campbell has been leafleting patrons of the circus for six years and videotaping its treatment of animals for five years. SAC ¶ 20. Ennis has been engaged in protest activities for fourteen years. SAC ¶ 21.

Defendants' circus generally comes to the San Francisco Bay Area every August and September, and they typically perform one evening show per day during the week and two or three shows each weekend day. SAC ¶ 24. Two or three days before the first performance, Defendants bring the animals via railroad to the city in which they are performing and then walk the animals from the railroad to the forum (the "animal walk"). SAC ¶ 25. Defendants reverse the process after the last performance. SAC ¶ 25. In between, the animals are kept in a compound that often is set up in the parking lot of the arena in which the circus is appearing. SAC ¶ 26. Plaintiffs and other members of HTE videotape the animals during the walks to and from the railroad and while the animals remain in the compound. SAC ¶ 27.

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART, AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1       Plaintiffs allege that Defendants have a "policy and practice . . . to intentionally interfere

2   with Plaintiffs' free speech rights for the purpose of chilling [P]laintiffs in the exercise of their

3   constitutionally protected rights."  SAC ¶ 30.  Plaintiffs claim that Defendants and their employees

4   were motivated by Plaintiffs' political beliefs and the intent to prevent them from exercising their

5   speech rights.  SAC ¶¶ 76, 77.

6       Plaintiffs assert that for the past several years, Defendants' employees have harassed them

7   and interfered with their ability to videotape the animals.  SAC ¶ 28.  Defendants' employees

8   engage in physical assaults and attempts to block Plaintiffs' cameras while Plaintiffs attempt to

9   videotape the animals.  SAC ¶ 28.  Defendants' employees' conduct takes three general forms: (1)

10  using a rope during the animal walks to harass Plaintiffs and interfere with Plaintiffs' videotaping;

11  (2) shining laser pointers and strobe lights into Plaintiffs' cameras; and (3) physical and verbal

12  assaults on Plaintiffs while Plaintiffs are videotaping.  SAC ¶¶ 31, 32, 33.  Plaintiffs point to

13  specific incidents of each of these types of conduct.  For the sake of clarity, the Court describes

14  each type of conduct and the incidents Plaintiffs allege in turn.

15      **A.      Use of the Rope**

16      Beginning in 2006 "and to the present" Defendants' employees hold a long rope alongside

17  the animals as the animals are being walked from the railroad to the forum.  SAC ¶ 33.  According

18  to Plaintiffs, Defendants' employees use the rope to interfere with their protests and their

19  videotaping of the animal walk by wrapping the rope around Plaintiffs, pushing the rope into

20  Plaintiffs as they walk on the sidewalk, and hooking the rope under Plaintiffs' monopods for their

21  video cameras.  SAC ¶ 33.  Plaintiffs assert that as a result they must redirect their attention from

22  their protest and videotaping activities to "monitoring the actions of the employees holding the

23  rope" and "repeatedly telling the Circus employees to stop harassing them with the rope."  SAC ¶

24  40.  Campbell claims that she was injured by rope burn on her hands when she tried to move the

25  rope away from her body and the employees pulled the rope tighter.  SAC ¶ 41.  Plaintiffs also

26  claim that during the animal walks, Defendants violate the restrictions imposed by the municipal

27  permits Defendants obtain to walk the animals in public streets.  SAC ¶ 38.

28

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART,
AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

Plaintiffs describe several specific incidents involving Defendants' employees' use of the ropes against them:

- In September 2007, in Stockton, California, Defendants' employees used the rope on the animal walk from the arena to the train station "to interfere with Plaintiff and other activists by pushing the rope against the activists and wrapping the rope around" Plaintiffs.  SAC ¶ 43.

- In August 2009, in Oakland, California, "Ringling rope holders wrapped the rope around both plaintiffs . . . and pulled hard."  SAC ¶ 43.

- In August 2011, Defendants' employees under the supervision of Stuart "used a large rope on the walk from the train to the arena to interfere with [Ennis], by pushing the rope against him and wrapping the large rope around him as he videotaped the treatment of the animals while standing in a publicly owned parking lot."  SAC ¶ 43.

- In August 2011, in Daly City, California, Bailey "failed to prevent his employees from using the rope to block off the public sidewalk, thereby impeding [Ennis'] use of the walkway as he videotaped the treatment of the animals" during an animal walk.  SAC ¶ 43.

- In September 2011, in Daly City, California, "Ringling rope holders hooked the rope under [Campbell's] camera mounted monopod in order to interfere with her videotaping of the animals being walked down the street."  SAC ¶ 43.

- In August 2012, in Oakland, California, as Campbell attempted to videotape the animals, Defendants' employees, including Stuart, used "the ropes and their bodies to attempt to block" Campbell from videotaping.  SAC ¶ 52.  During the animal walk, Defendants' employees forced Campbell off the paved road, which required Campbell to climb over a barricade, resulting in bruising on her leg that persisted for a month.  SAC ¶ 75.  Stuart and Bailey were supervising Defendants' employees while these actions were taking place.  SAC ¶ 58.

4

Plaintiffs allege that these incidents reveal "the Circus' acceptance of this conduct as ordinary and not unusual, and within the scope of its employees' work."  SAC ¶ 43.  As a result of the improper use of the ropes, Plaintiffs have to forego videotaping the treatment of the animals and instead redirect their attention to monitoring Defendants' employees' actions and telling Defendants' employees to stop harassing Plaintiffs.  SAC ¶¶ 71-72.

### B.    Laser Pointers

Beginning in 2007, Defendants' employees and members of the security staff "would shine laser pointers and strobe lights into Plaintiff Campbell's eyes and camera lens."  SAC ¶ 31.  As a result, Campell had "to forego videotaping the Circus' treatment of the animals and redirect her attention to avoiding the laser pointers from shining directly into her eyes, or indirectly into her eyes through the camera lens, for fear of damaging her eyes."  SAC ¶ 31.

Campbell points to one specific incident involving laser pointers.  In August 2009, Deniz Bolbol ("Bolbol") and Joseph Cuviello ("Cuviello"), two other members of HTE, obtained a preliminary injunction that allowed Bolbol, Cuviello, "or another individual working with them" access to an area adjacent to the entrance of the Oakland Arena's north tunnel to videotape the animals.  SAC ¶ 44.  In August 2010, Campbell attempted to videotape from that spot.  SAC ¶ 45.  A Ringling Bros. employee "shined a laser pointer both into [Campbell's] camera, and directly into her eyes" while she was videotaping.  SAC ¶ 45.  Defendants James Dennis and Matthew Gillett also shined laser pointers "into the cameras of activists."  SAC ¶ 46.

### C.    Physical and Verbal Assaults

According to Ennis, "[t]he Circus' tactics . . . include throwing objects at [Ennis'] person and his camera, as well as hitting . . . his camera, and physically pushing and grabbing him."  SAC ¶ 32.  Defendants' employees have called Campbell "a terrorist" and "a PETA person."  SAC ¶ 42.  Defendants' employees have stated that Campbell "only cares about animals," "wants to scare the kids," "doesn't have a life," and "doesn't have a boyfriend."  SAC ¶ 42.

Plaintiffs point to specific incidents of physical assaults by Stuart and Defendants' employees:

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART, AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

- In July 2012, in Fresno, California, Defendants' employees "threw a plastic bottle, a handful of ice cubes and two wooden sticks" at Ennis and Cuviello while Ennis and Cuviello were on a public sidewalk videotaping the animals. SAC ¶ 47. One of the sticks hit Ennis' camera, and one of the sticks hit Ennis' shoulder. SAC ¶ 47. Stuart and Bailey were supervising the employees at the time. SAC ¶ 47.

- On August 7, 2012, in Oakland, California, during the animal walk, Defendants' employees "pushed . . . their bodies up against" Campbell. SAC ¶ 52. Campbell repeatedly told the employees to stop touching her. SAC ¶ 52. Stuart, who is allegedly approximately six feet three inches tall, weighs approximately 260 pounds, and is twice the weight of Campbell, "personally used his body to push and block [Campbell] as she tried to walk and videotape." SAC ¶ 52.

- At the same animal walk, Stuart physically blocked Ennis from entering the Oakland arena's parking lot. SAC ¶ 53. Stuart "walked into and pressed his protruding abdominal area against . . . Ennis numerous times, pushing [Ennis] away." SAC ¶ 53. Stuart "grabbed" and "forcefully moved" Ennis at one point. SAC ¶ 53.

- On August 18, 2012, in San Jose, California, a circus employee ("Doe 1") "purposely walked into [Ennis] as he stood on a public sidewalk videotaping" the animals. SAC ¶ 59. Ennis recognized Doe 1 as a rope handler during the August 2012 animal walk in Oakland. SAC ¶ 59. Doe 1 then entered a secured area that Ennis could not access. SAC ¶ 59. Ennis reported the incident to San Jose police. SAC ¶ 60.

As a result of Stuart's and Defendants' employees "offensive touching," Plaintiffs had to forego videotaping the animals and instead had to redirect their attention to avoiding injury and damage to their property. SAC ¶ 72. As a result of Defendants' employees' throwing objects at Ennis, Ennis had to forego videotaping the animals and instead had to redirect his attention to avoiding injury and damage to his property. SAC ¶ 73. Because of Defendants' employees' actions, Plaintiffs fear for their safety. SAC ¶ 74.

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART, AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

### D.      Harm to Plaintiffs

Plaintiffs have suffered emotional distress, including severe stress, anxiety, depression, and loss of sleep, and the distress has been cumulative.  SAC ¶ 79.  Because of the harassment, Campbell has had to keep her camera turned on for extended periods of time "in order to capture and document Defendants['] assaults."  SAC ¶ 73.  As a result, Campbell has had to purchase significantly larger and more expensive memory cards for her camera.  *Id.*

From these factual allegations, Plaintiffs each assert several causes of action.  Campbell brings nine causes of action: (1) unlawful business practices that violate Cal. Bus. & Prof. Code § 17200; (2) violations of the Ralph Act, Cal. Civ. Code § 51.7; (3) violations of Article I, § 2(a) of the California Constitution; (4) violations of the Bane Act, Cal. Civ. Code § 52.1; (5) claims under Cal. Civ. Proc. Code §§ 527.6(a), (b); (6) intentional infliction of emotional distress ("IIED"); (7) negligent supervision; (8) assault; and (9) battery.  Ennis brings six causes of action: (1) violations of the Ralph Act, Cal. Civ. Code § 51.7; (2) violations of Article I, § 2(a) of the California Constitution; (3) violations of the Bane Act, Cal. Civ. Code § 52.1; (4) claims under Cal. Civ. Proc. Code § 527.6(a), (b); (5) negligent supervision; and (6) battery.

## II.      LEGAL STANDARDS

### A.      Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART, AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

1    However, a court need not accept as true allegations contradicted by judicially noticeable

2 facts, *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look

3 beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

4 motion into one for summary judgment, *Shaw v. Hahn,* 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

5 Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in

6 the form of factual allegations.'" *Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011) (per

7 curiam) (quoting *W. Min. Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory

8 allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

9 *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal,* 556 U.S. at 678.

10 Furthermore, a "plaintiff may plead herself out of court" if she "plead[s] facts which establish that

11 [s]he cannot prevail on h[er] ... claim." *Weisbuch v. Cnty. of L.A.,* 119 F.3d 778, 783 n.1 (9th Cir.

12 1997) (internal quotation marks and citation omitted).

13    **B.    Motion to Strike**

14    Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

15 insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  *See* Fed. R.

16 Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and

17 money that must arise from litigating spurious issues by dispensing with those issues prior to trial."

18 *Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983).  Motions to strike are

19 generally disfavored and "should not be granted unless the matter to be stricken clearly could have

20 no possible bearing on the subject of the litigation . . . If there is any doubt whether the portion to

21 be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte*

22 *Anchor Bolt, Inc. v. IHI, Inc.,* 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (internal citations

23 omitted).  "With a motion to strike, just as with a motion to dismiss, the court should view the

24 pleading in the light most favorable to the nonmoving party." *Id.*  "Ultimately, whether to grant a

25 motion to strike lies within the sound discretion of the district court."  *Cruz v. Bank of New York*

26 *Mellon,* No. 12–00846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone,*

27 *Inc. v. Handi–Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010)).

28

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART, AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# III.    DISCUSSION

## A.    Motion to Dismiss

Defendants do not move to dismiss Plaintiffs' entire complaint. Defendants move to dismiss only Plaintiffs' claim under Article I, Section 2 of the California Constitution and Plaintiffs' negligent supervision claims; Campbell's Section 17200 and IIED claims; and Plaintiffs' assault and battery claims as to Stuart and Bailey only. The Court considers in turn each claim that is the subject of Defendants' motion. The Court begins with Plaintiffs' claim under Article I, Section 2 of the California Constitution.

### 1.    Article I, Section 2 Claim

Defendants challenge Plaintiffs' cause of action under Article I, Section 2 of the California Constitution on two grounds. Plaintiffs allege that Defendants interfered and attempted to interfere "through threats, harassment, intimidation and coercion of Plaintiffs while videotaping the Circus' treatment of the animals in a public forum." SAC ¶ 98. According to Plaintiffs, Defendants' actions "deprived Plaintiffs of the clearly established and well-settled Constitutional right protected by Article 1, Section 2(a) of the California Constitution," rendering Defendants liable for that violation. *Id.*

Defendants argue that Plaintiffs' Article I, Section 2 claim is unsustainable because Article I, Section 2 includes a state actor limitation. Defendants assert that because Defendants are private actors, Plaintiffs cannot state a cause of action against Defendants for violations of Article I, Section 2. Defendants also contend that Plaintiffs' factual allegations do not support a tort cause of action under Article I, Section 2.

Plaintiffs respond that Article I, Section 2 does not include a state actor limitation. Plaintiffs further argue that even if Article I, Section 2 includes a state actor limitation, Defendants qualify as state actors based on Defendants' actions. Plaintiffs also contend that Plaintiffs' factual allegations support a tort cause of action under Article I, Section 2. Plaintiffs further highlight that regardless of whether Article I, Section 2 supports a tort cause of action, the California Supreme Court has held that Article I, Section 2 supports a cause of action for injunctive relief. *See*

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART, AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

1    *DeGrassi v. Cook*, 29 Cal. 4th 333, 338 (2002) (noting that Article I, Section 2(a) "supports an

2    action, brought by a private plaintiff against a proper defendant, for declaratory relief or for

3    injunction").  Plaintiffs point out that Defendants do not challenge Plaintiffs' action under Article I,

4    Section 2 for injunctive relief.

5           Defendants counter that because Article I, Section 2 has a state actor limitation, the remedy

6    Plaintiffs seek is irrelevant.  Defendants further argue that even if the Court holds that Article I,

7    Section 2 does not require a state actor, Article I, Section 2 nevertheless does not support Plaintiffs'

8    tort cause of action.

9           Because the state actor limitation issue underpins Plaintiffs' claim for damages and

10   injunctive relief, the Court addresses the state actor limitation first.

11                    **a.       California Supreme Court's Interpretation of Article I, Section 2**

12          The Court begins with an analysis of the state actor limitation issue.  To support their

13   argument, Defendants point to the plurality opinion of the California Supreme Court in *Golden*

14   *Gateway Center v. Golden Gateway Tenants Association*.  26 Cal. 4th 1013 (2001).  In *Golden*

15   *Gateway*, the California Supreme Court considered whether a tenants association had a

16   constitutionally protected right to distribute newsletters in a privately-owned apartment complex.

17   *Id.* at 1016-19.  Three of the justices on the California Supreme Court concluded that Article I,

18   Section 2 includes a state actor limitation in its protection of free speech rights and so the tenants

19   association had no constitutionally protected right.  *Id.* at 1031.  Three justices dissented and

20   argued that under the Court's precedents, Article I, Section 2 protected against interference with

21   free speech by private actors, and thus the tenants association was protected against unreasonable

22   time, place, or manner restrictions by the landlord.  *Id.* at 1049, 1053 (Werdegar, J. dissenting).

23   Chief Justice George concurred in the result that Article I, Section 2 did not protect the tenant

24   association's distribution but on the grounds that the apartment complex was not open to the

25   public.  *Id.* at 1039-40 (George, C.J. concurring in result).  Chief Justice George opined that

26   resolving the state actor limitation question was unnecessary and ill-advised.  *Id.* at 1041-42

27   (George, C.J. concurring in result).

28

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART,
AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

1    Plaintiffs counter that because *Golden Gateway* was a plurality opinion, it is not binding.

2    Plaintiffs instead point to *Gerawan Farming, Inc. v. Lyons*, in which the California Supreme Court

3    stated that "article I's right to freedom of speech, unlike the First Amendment's, is unbounded in

4    range" and "runs against the world, including private parties as well as governmental actors." 24

5    Cal. 4th 468, 492 (2000). As both the lead opinion and the dissent in *Golden Gateway*

6    acknowledge, however, the statement in *Gerawan* is dicta and not binding on California courts.

7    *Golden Gateway*, 26 Cal. 4th at 1028-29, 1047. Furthermore, because there was no question that

8    there was a state actor in *Gerawan*, the California Supreme Court did not analyze the state actor

9    limitation issue. *See Gerawan*, 24 Cal. 4th at 482, 492; *see also Golden Gateway*, 26 Cal. 4th at

10   1029 (observing that in *Gerawan* "[b]ecause the presence of a state actor was undisputed," the

11   Court "did not carefully consider whether California's free speech clause requires state action.").

12    Given that neither *Golden Gateway* nor *Gerawan* are binding authority, the Court looks to

13   other California Supreme Court case law to determine whether the California Supreme Court is

14   likely to ultimately hold that Article I, Section 2 includes a state actor limitation. In *Robins v.*

15   *Pruneyard Shopping Center*, the California Supreme Court held that Article I, Section 2 protects

16   the reasonable exercise of speech rights in privately-owned shopping centers. 23 Cal. 3d 899, 910

17   (1979). In *Pruneyard*, the Supreme Court reasoned that "[s]hopping centers to which the public is

18   invited can provide an essential and invaluable forum for exercising [speech and petition] rights."

19   *Id.*

20    In *Fashion Valley Mall, LLC v. NLRB*, the California Supreme Court considered whether a

21   shopping center could prohibit speech advocating a boycott of a store in the shopping center. 42

22   Cal. 4th 850, 856-57 (2007). The *Fashion Valley Mall* Court looked to *Pruneyard* to reiterate that

23   a privately-owned shopping center could become a public forum if opened to the public "in a

24   manner similar to that of public streets and sidewalks." *Id.* at 858. Looking to its other precedents

25   pre-dating *Pruneyard*, the Supreme Court observed that in doing so the private property "could

26   constitute a public forum for free expression" and thus be subject to the same prohibitions against

27

28

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART,
AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1    restricting free expression as the state.  *Id.* at 859, 861.  The Supreme Court did not address the

2    state actor limitation.

3         Most recently, in *Ralphs Grocery Co. v. United Food & Commercial Workers Union Local*

4    *8*, the California Supreme Court again applied *Pruneyard* to determine whether a privately-owned

5    grocery store had been so opened to the public that Article I, Section 2 protection of speech

6    applied.  55 Cal. 4th 1083, 1093 (2012).  In holding that entrances and exits to a grocery shopping

7    center do not constitute public fora subject to Article I, Section 2 limitations, the California

8    Supreme Court noted that *Pruneyard* had determined that Article I, Section 2 only applied in

9    "shopping centers' common areas, which generally have seating and other amenities producing a

10   congenial environment that encourages passing shoppers to stop and linger, to leisurely congregate

11   for purposes of relaxation and conversation."  *Id.* at 1120.

12        Notably, *Pruneyard*, *Golden Gateway*, *Fashion Mall*, and *Ralphs Grocery* all dealt with

13   restrictions private property owners placed on people exercising speech rights on the private

14   property.  Nothing in those decisions suggests a broader application of Article I, Section 2 to other

15   private actors.  *See Cuviello v. City of Stockton*, No. CIV. S-07-1625 LKK/KJM, 2008 WL

16   4283260, at *7 (E.D. Cal. Sept. 16, 2008) (noting that Article I, Section 2 applies only to "those

17   private actors who open their land to the public and, in so doing, resemble state actors").

18        Plaintiffs do not point to any cases, and the Court has not found any, in which the

19   California Supreme Court has explicitly extended the protection of Article I, Section 2 to

20   interference by private individuals outside of the context of a private actor's ownership of property

21   that has been opened to the public such that the private property in essence becomes a public

22   forum.  The Court observes that other federal district and California courts have found that a state

23   action limitation is required under Article I, Section 2.  *See Bolbol v. Feld Entmt, Inc.*, No. C 11-

24   5539 PSG, 2013 WL 257133, at *6 (N.D. Cal. Jan. 23, 2013) (finding *Golden Gateway* persuasive

25   and holding that Article I, Section 2 requires state action); *Ennis v. City of Daly City*, No. C. 09–

26   05318 MHP, 2011 WL 672655, at *6 (N.D. Cal. Feb. 16, 2011) (noting that "the California

27   Constitution's free speech clause has a state action limitation"); *Thornbrough v. W. Placer Unified*

28

                                                        12

1    *Sch. Dist.*, No. 2:09–cv–02613–GEB–GGH, 2010 WL 2179917, at *7 (E.D. Cal. May 27, 2010)

2    ("California's free speech clause predicates a violation upon state action."); *Yu v. Univ. of La*

3    *Verne*, 196 Cal. App. 4th 779, 790 (2011) ("A person's free speech rights under the federal and

4    state constitutions are not infringed unless there is state action."); *see also Buza v. Yahoo!*, No. C

5    11–4422 RS, 2011 WL 5041174, at *2 (N.D. Cal. Oct. 24, 2011) (noting that California Supreme

6    Court was moving away from the expansive view of Article I, Section 2).

7           Based on these precedents, the Court agrees that under California law, Article I, Section 2

8    includes a state actor limitation such that Article I, Section 2 protects only against the interference

9    by state actors of citizens' exercise of speech rights in a public forum.  In certain limited situations

10   in which a private actor opens his land to the public such that the land becomes a public forum, a

11   private actor may satisfy the state actor limitation.  Absent this limited exception, California law

12   does not support holding a private actor liable under Article I, Section 2 for interference with

13   another private actor's exercise of speech rights in a public forum.

14                    **b.        Parties' Arguments and Application to Instant Case**

15          In the instant case, Plaintiffs do not allege that Defendants are private actors who opened

16   their private property to the public such that the private property became a public forum.  Instead,

17   Plaintiffs allege that while Plaintiffs are in public fora, Stuart, Bailey, and Defendants' employees

18   "interfere[] and attempt[] [to] interfere[] through threats, harassment, intimidation and coercion"

19   with Plaintiffs' videotaping of the animals.  SAC ¶ 98.  Plaintiffs allege that the harassment occurs

20   on public sidewalks (SAC ¶¶ 33, 39, 43, 47, 51) and on arena property that is owned by public

21   entities (SAC ¶¶ 43, 44, 45, 53, 54, 59).  Plaintiffs do not allege that Defendants own or have

22   control of any of the property on which Plaintiffs exercised Plaintiffs' speech rights.  Thus,

23   Plaintiffs' allegations do not support an inference that Defendants fit within the narrow exception

24   to the state actor limitation.

25          Plaintiffs suggest that unlike the cases before the California Supreme Court, in which a

26   property owner's property interest had to be balanced against a citizen's free speech rights, here

27   Defendants have no property interest against which the Court must balance Plaintiffs' speech

28

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART,
AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   rights.  Plaintiffs contend that because Defendants do not have a private property interest in the

2   fora in which Plaintiffs exercised their speech, no private property rights limit the protection of

3   Plaintiffs' free speech rights.  Plaintiffs conclude that accordingly Article I, Section 2 protects

4   Plaintiffs from interference by Defendants when Plaintiffs are in public fora.

5           Plaintiffs, however, offer no case law to support this interpretation of Article I, Section 2.

6   The case law instead supports that under Article I, Section 2, Plaintiffs only have a right to be free

7   from interference with their exercise of speech rights in a public forum by state actors or by private

8   property owners who have taken on the auspices of state actors.  The Court sees no reason to depart

9   from these holdings.

10          Plaintiffs alternatively argue that even if Article I, Section 2 includes a state actor

11  limitation, Defendants nevertheless are "state actors" under California law.  Plaintiffs point to

12  *Fashion Valley Mall* and *Golden Gateway* to argue that when a public forum is involved, a private

13  actor may be liable under Article I, Section 2 for interference with another private actor's exercise

14  of free speech.  Plaintiffs contend that in the instant case because the speech at issue took place on

15  public sidewalks and streets, public fora are implicated, and Defendants' alleged restrictions of free

16  speech on those sidewalks and streets render them state actors.  Plaintiffs misread *Golden Gateway*

17  and *Fashion Valley Mall*.  Under *Golden Gateway* and *Fashion Valley Mall*, the reason that a

18  private actor may be considered a state actor is because, like the state, the private actor has

19  provided a public forum for speech.  *See Golden Gateway*, 26 Cal. 4th at 1031; *see Fashion Valley*

20  *Mall*, 42 Cal. 4th at 861.  In cases where a private property owner opens his property to the public

21  such that the property becomes a public forum, the private property owner essentially steps into the

22  shoes of the state and in so doing is subject to the same restrictions as the state.  Neither case holds

23  that interference with the exercise of speech rights alone transforms a private actor into a state

24  actor.

25          Plaintiffs have not argued any other basis for considering Defendants as state actors and

26  thus potentially liable under Article I, Section 2.  Given that the California Supreme Court has not

27  identified any other basis for determining state action under Article I, Section 2, the Court need not

28

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART,
AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

address Defendants' arguments – raised for the first time in their reply briefs – that Defendants are not state actors under federal law doctrines.

Because the Court has determined that Article I, Section 2 includes a state actor limitation and that Plaintiffs' factual allegations do not satisfy this limitation, the Court finds that dismissal of Plaintiffs' allegations is warranted. Because Plaintiffs may cure the deficiency, the Court, in an abundance of caution, grants Plaintiffs leave to amend. Because Plaintiffs have failed to state a claim under Article I, Section 2, the Court need not reach the issue of whether Plaintiffs may assert a tort cause of action under Article I, Section 2.

### 2.    Negligent Supervision Claim

Defendants assert that Plaintiffs' claim for negligent supervision fails. The Court first describes the law on negligent supervision and Plaintiffs' allegations before turning to Defendants' argument and Plaintiffs' response.

"An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." *Delfino v. Agilent Tech., Inc.*, 145 Cal. App. 4th 790, 815 (2006). "Negligence liability will be imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Id.* (internal quotations and citations omitted). "[T]here can be no liability for negligent supervision in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised." *Juarez v. Boy Scouts of America*, 81 Cal. App. 4th 377, 395 (2000) (internal citations and quotations omitted). Negligent supervision creates direct liability; it is distinct from an employer's vicarious liability for the actions of the employer's employees within the scope of employment. *Id.*

Relying on the Restatement Second of Agency, Section 213, the California Court of Appeal in *Roman Catholic Bishop v. Superior Court* opined that an employer may be directly liable under a negligent supervision theory if he is "negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving risk of harm to others[.]" 42 Cal. App. 4th 1556, 1565 (1996). The fact that the agent is "incompetent, vicious, or careless" is insufficient to

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   establish direct liability of the principal. *Id.* "If liability results it is because, under the

2   circumstances, the employer has not taken the care which a prudent man would take in selecting

3   the person for the business in hand." *Id.* Thus, "[l]iability results . . . not because of the relation of

4   the parties, but because the employer antecedently had reason to believe that an undue risk of harm

5   would exist because of the employment." *Id.*

6          Plaintiffs allege that Defendants "failed to properly supervise their employees and allowed

7   [the employees] to engage in the acts . . . which resulted in unlawful touching of plaintiff's person

8   and property and interfering with her rights." SAC ¶ 121. Plaintiffs also allege that Defendants

9   "owed Plaintiff the duty to use reasonable care in" ensuring certain safety procedures and

10  procedures to protect Plaintiffs' exercise of free speech and in training employees to follow those

11  procedures. SAC ¶¶ 113-120. Plaintiffs describe one specific employee, Doe 1, that Defendants

12  "failed to supervise" when Doe 1 "harassed activists with a rope on August 7, 2012 in plain view

13  of his supervisors and then purposely walked into Mr. Ennis as he stood on a public sidewalk

14  videotaping on August 18, 2012." SAC ¶ 122.

15         Defendants argue that Plaintiffs' allegations fail to show that Defendants knew or should

16  have known that unnamed circus employees were unfit either at the time the employees were hired

17  or at any other time during the employment. Defendants point to Plaintiffs' failure to identify the

18  employees that Defendants either knew were unfit or should have used reasonable care to identify

19  as unfit. Plaintiffs respond that the failure to identify the employees is not fatal to Plaintiffs' claim.

20  Plaintiffs further assert that because the complaint alleges that Defendants permitted the employees

21  to engage in unlawful acts against Plaintiffs and that Defendants in fact had a pattern or policy of

22  engaging in unlawful acts against Plaintiffs, the Court can reasonably infer that Defendants knew

23  that the employees were engaging in unlawful activities.

24         At the September 19, 2013 case management conference, Plaintiffs withdrew their

25  negligent supervision cause of action, so the Court DENIES Defendants' motion to dismiss this

26  claim as moot.

27

28

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART,
AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

### 3. Campbell's Section 17200 Claim

Defendants argue that Campbell does not have standing to assert a claim under Cal. Bus. & Prof. Code § 17200 because Campbell has not alleged an economic injury attributable to Defendants' alleged conduct. The Court again begins with a description of the relevant law and Campbell's allegations before turning to Defendants' argument and Campbell's response.

Section 17204 provides that "[a]ctions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Plaintiffs must (1) "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*," and (2) "show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011).

California looks to federal law to interpret the "injury in fact" element. *Id.* "Under federal law, injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). As to "economic injury," the California Supreme Court has observed that the "economic injury requirement is qualitatively more restrictive than federal injury in fact, embracing as it does fewer kinds of injuries." *Id.* "If a party has alleged or proven a personalized, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." *Id.* The economic injury must come "as a result of the unfair competition." *Id.* (citing Cal. Bus. & Prof. Code § 17204). This element "requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.* (citation omitted).

Campbell alleges that the "purpose in videotaping is to record the treatment of animals." SAC ¶ 79. Campbell alleges that "[a]s a direct result of [Defendants'] harassment," Campbell "has been required to keep her camera turned on for extended periods of time in order . . . to capture and document Defendants [sic] assaults upon her and other antics." *Id.* Campbell further alleges that

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART, AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

as a result Campbell "has been forced to purchase significantly larger, and significantly more expensive memory cards for her camera." *Id.* Campbell also alleges that as a result of Defendants' actions, Campbell has suffered "embarrassment, humiliation, mental suffering and emotional distress." SAC ¶¶ 71, 77.

Defendants argue that Campbell's allegations do not suffice to establish standing for three reasons. First, Campbell's allegations of emotional distress suffered as a result of Defendants' alleged conduct do not suffice as "economic injury." Second, Defendants argue that Campbell's allegations fail to show "business dealings" between Defendants and Campbell. Third, Defendants contend that Campbell's allegations of having to buy more expensive memory cards fail to allege that Defendants' actions caused Campbell's injury. Defendants specifically point to Campbell's failure to allege that Defendants' alleged interference changed the length of time that Campbell needed to videotape the animal walks. According to Defendants, Campbell has not alleged that Defendants' alleged actions have required Campbell to use more memory and thus Campbell's decision to purchase larger and more expensive memory cards was not caused by Defendants' actions.

Campbell first responds that *Kwikset* does not include a "business dealings" requirement. The Court agrees. As the California Court of Appeal observed in *Law Offices of Matthew Higbee v. Expungement Assistance Servs.*, neither *Kwikset* nor *Clayworth v. Pfizer*, 49 Cal. 4th 758 (2010) -- the California Supreme Court decision in which the "business dealings" language first appeared -- grafted a "business dealings" requirement onto causes of action under Section 17200. 214 Cal. App. 4th 544, 561-62 (2013). The lack of allegations of business dealings between Campbell and Defendants therefore is not fatal to Campbell's claim.

Campbell next counters Defendants' challenge to her standing under Section 17200 by pointing to Campbell's allegations of having been required to purchase larger and more expensive video cards. Campbell alleges that she purchased the additional memory to "capture and document [D]efendants' actions." SAC ¶ 86. Campbell further alleges that Campbell has had to "keep her camera turned on for extended periods of time" to document Defendants' alleged harassment.

18

United States District Court
For the Northern District of California

SAC ¶ 79.  An economic injury need not be substantial.  *Kwikset*, 51 Cal. 4th at 324.  Campbell's allegation that she spent money to purchase more expensive memory cards, if true, presents an economic injury.

Defendants reply that Campbell asserts that Defendants' alleged conduct in fact forced her to forego videotaping.  Campbell's allegations, however, state that she had to forego videotaping the animals, not that she turned off her camera or that she stopped videotaping altogether.  SAC ¶¶ 40, 57, 71, 72, 77.  Defendants' argument that the SAC does not support Campbell's assertion that she needed increased memory because she was videotaping for a longer period of time therefore is unavailing.

Defendants also argue that Campbell would have videotaped for the same amount of time and therefore used the same amount of memory regardless of Defendants' actions.  Defendants point to nothing in the SAC that supports that Campbell would have videotaped the same length of time regardless of Defendants' actions.  Campbell alleges that as part of her activism she "videotape[s] the living conditions and treatment of the animals while they are on the train, being loaded and unloaded from the train, and being walked to and from the arenas."  SAC ¶ 27. Campbell also asserts that because of Defendants' alleged conduct, she keeps her camera on for longer periods of time than she would if Defendants did not engage in the alleged harassment. SAC ¶ 79.  Taken as true, Campbell's need to keep her camera on for an extended period of time and her need to purchase additional and better memory cards to sustain videotaping for that length of time were the result of Defendants' alleged unlawful actions.[1]  The Court finds that Campbell's allegations suffice to support a finding of standing under Section 17200.  Accordingly, Defendants' motion to dismiss Campbell's Section 17200 claim on these grounds is DENIED.

---

[1] Campbell does not contend that her emotional distress and embarrassment allegations constitute injury under Section 17200.  The Court therefore does not address Defendants' arguments regarding whether those allegations support standing under Section 17200.

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART, AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

### 4.    Campbell's IIED Claim

Defendants argue that Campbell's claim for intentional infliction of emotional distress ("IIED") fails because Campbell fails to allege conduct by Defendants that is "extreme and outrageous" or that her emotional distress is "severe or extreme."

The elements of the tort of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal citations omitted). To be "outrageous," the conduct must be so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal citations omitted). "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id.* (citation omitted).

The Court considers whether Campbell's allegations suffice under the "outrageous" conduct and "severe emotional distress" prongs in turn.

### a.    "Outrageous" Conduct

To support her IIED claim, Campbell points to her allegations that Defendants and their employees pressed ropes against her and caused rope burns while Campbell was attempting to videotape during the animal walks (SAC ¶ 41, 43); that using the ropes, Defendants forced Campbell into a barrier, resulting in injury (SAC ¶ 75); and that Defendants and their employees shined laser pointers into her eyes and into her camera while she was videotaping the animals (SAC ¶¶ 45, 46). Campbell also offers factual allegations arising out of more recent encounters between Campbell and circus personnel. Campbell asserts that as a result of Defendants and their employees' alleged actions, Campbell has suffered "emotional distress" that "has been lasting and

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART, AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

severe." SAC ¶ 78. Campbell states that the alleged conduct specifically caused Campbell "severe stress and anxiety, depression, and loss of sleep." *Id.*

Defendants argue that Campbell's allegations do not state actions that amount to "outrageous" conduct. The Court finds that Defendants' alleged physically threatening behavior with the ropes and the laser pointers constitutes "outrageous" conduct. *See Kiseskey v. Carpenters' Trust for S. California*, 144 Cal. App. 3d 222, 230 (1983) (finding that threats of violence to coerce behavior was sufficiently outrageous to state an IIED claim). Dismissal on these grounds therefore is not warranted.

### b.    Severe Emotional Distress

Defendants also dispute that Campbell has asserted the requisite emotional distress to state a claim for IIED. The Court finds Campbell's allegations regarding the emotional distress she suffered do not suffice to state a cause of action for IIED. Campbell asserts that she suffered "severe stress and anxiety, depression, and loss of sleep" and that her distress has been "lasting." SAC ¶ 78. Even taken as true, Campbell's allegations do not indicate that she suffered sufficiently severe emotional distress. *Hughes*, 46 Cal. 4th at 1051 (holding plaintiff's asserted "discomfort, worry, anxiety, upset stomach, concern, and agitation" were insufficient to show emotional distress was "severe"); *see also Lawler v. Montblanc North America LLC*, 704 F.3d 1235, 1246 (9th Cir. 2013) (holding that "anxiety, sleeplessness, upset stomach, [and] sometimes muscle twitches . . . alone do not rise to the level of 'severe'" (alterations in original)). Although Campbell adds the word "severe" to her complaints, Campbell nevertheless offers only conclusory allegations regarding how her alleged injuries rise to the level of "severe." *See Schultz v. Stericylce, Inc.*, No. CV F 13–1244 LJO MJS, 2013 WL 4776517, at *8 (E.D. Cal. Sept. 4, 2013) (finding allegations of "pain and suffering, extreme and severe mental anguish, and emotional distress with no fact to support such symptoms or conditions" failed to meet "severe emotional distress" prong). Accordingly, dismissal of Campbell's IIED claim is warranted. Because this deficiency could be cured upon amendment, leave to amend is appropriate. Thus, Defendants' motion to dismiss Campbell's IIED claim is GRANTED with leave to amend.

21

United States District Court
For the Northern District of California

**5.   Assault and Battery Claims as to Stuart and Bailey**

Campbell brings both an assault and a battery claim against Defendants.  Ennis brings only a battery claim against Defendants.  Stuart and Bailey individually move to dismiss Campbell's assault and battery claims and Ennis' battery claim.  The Court begins with Plaintiffs' battery claims before turning to Campbell's assault claim.

**a.   Battery**

"A battery is any intentional, unlawful and harmful contact by one person with the person of another."  *Ashcraft v. King*, 228 Cal. App. 3d 604, 611 (1991).  To establish a claim for battery, a plaintiff must show: (1) that the defendant made contact with the plaintiff with the intent to harm or offend; (2) that the plaintiff did not consent to the contact; and (3) that the plaintiff was harmed or offended by the contact.  *See Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1051 (N.D. Cal. 2006) (citing *Ashcraft*, 228 Cal. App. 3d at 611).  "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person."  *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007) (omission in original) (internal quotations omitted).  "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting."  *Id.* (internal quotations omitted).  "As a general rule, one owes no duty to control the conduct of another," and thus "a supervisor is not liable to third parties for the acts of his or her subordinates."  *Id.* (internal quotations omitted).

Stuart and Bailey argue that Plaintiffs' allegations fail to identify Stuart and Bailey as the actors who committed the alleged battery and thus Plaintiffs' battery claims should be dismissed. In the body of Plaintiffs' battery cause of action, Plaintiffs allege that "Defendants' actions as alleged in striking and tying Plaintiff Campbell with ropes and in shining laser lights into her eyes" constitute battery.  SAC ¶ 128.  Plaintiffs further allege that "Defendants' actions as alleged in throwing sticks at Plaintiff Ennis and striking him, as well as causing their ropes to collide with

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Ennis' body and property" also constitute battery.  SAC ¶ 129.  Stuart and Bailey argue that

2    because Plaintiffs have not specifically identified Stuart and Bailey as the actors committing the

3    alleged actions, Plaintiffs' battery claims fail.

4         Plaintiffs counter that the complaint includes specific allegations that Stuart "personally

5    used his body to push and block [Campbell] as she tried to walk and videotape."  SAC ¶ 52.  The

6    Court finds this allegation suffices to meet the first element of Campbell's claim against Stuart for

7    battery.  *People v. Mansfield*, 200 Cal. App. 3d 82, 88 (1988) (noting for battery claim "*force

8    against the person is enough; it need not be violent or severe*").  Campbell further alleges she did

9    not consent to being touched (SAC ¶ 52) and that she found the touching "offensive," thereby

10   satisfying the second and third elements.  SAC ¶ 72.  Thus, Campbell has alleged sufficient facts to

11   state a claim for battery against Stuart.

12        Although Plaintiffs failed to raise the point, the Court notes that Ennis likewise has stated a

13   claim for battery against Stuart.  Ennis alleges that Stuart "grabbed" Ennis and "forcefully moved

14   him."  SAC ¶ 53.  Based on Ennis' allegations, the Court can reasonably infer that Ennis did not

15   consent to Stuart's contact.  *Id.* (alleging that as a result, Ennis "was forced to stop videotaping the

16   animals and redirect his efforts to avoid having his person and his property injured").  Ennis

17   likewise alleges that the alleged contact he suffered was "offensive."  SAC ¶ 72.  The Court

18   concludes that both Ennis and Campbell have stated a claim against Stuart for battery.  The Court

19   therefore DENIES the motion to dismiss both Plaintiffs' battery claims against Stuart.

20        To support their claim against Bailey, Plaintiffs argue that the allegations that Bailey

21   supervised Circus employees as the employees committed battery suffices to hold Bailey

22   personally liable for battery.  SAC ¶¶ 43, 48, 56, 58.  Supervision and the failure to stop employees

23   from engaging in intentional torts, however, are insufficient to state a claim for battery.  *Austin B.*,

24   149 Cal. App. 4th at 879 (holding that defendants could not be liable for failure to stop a battery

25   committed by another because "[m]ere knowledge that a tort is being committed and the failure to

26   prevent it does not constitute aiding and abetting").  The Court further notes that to the extent that

27   Plaintiffs seek to rely on Stuart's supervision of employees to support their respective battery

28

23

United States District Court
For the Northern District of California

claims, that reliance is equally misplaced.  Based on Plaintiffs' allegations, Stuart's supervision does not give rise to a battery claim either.  *See id.*

Because the only allegations against Bailey stem from his supervision of Circus employees, the Court DISMISSES both Plaintiffs' battery claims against Bailey.  Plaintiffs assert that Plaintiffs can add factual allegations to support their battery claims against Bailey.  The Court therefore grants Plaintiffs leave to amend these claims.

### b.    Assault

The Court turns now to Campbell's assault claim against Stuart and Bailey.  Campbell's assault allegations mirror her battery claim.  "Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." *Plotnick v. Meihaus*, 208 Cal. App. 4th 1590, 1603-04 (2012).  "[W]hile apprehension of that contact is the basis of assault . . . mere words, however threatening, will not amount to an assault." *Id.* at 1604 (quoting 5 Witkin, *Summary of California Law*, Torts, § 383, pp. 599-600).  "The elements of civil assault are: demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present."  *Hardin v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 1167, 1178 (E.D. Cal. 2011).  As with battery, a defendant may be liable for assault under an aiding-and-abetting theory if the defendant "substantially assisted" the intentional tort or if the defendant's substantial assistance in and of itself amounts to a breach of a duty to a third party. *Austin B.*, 149 Cal. App. 4th at 879.  Knowledge and an accompanying failure to stop the assault do not establish liability.  *Id.*

Campbell alleges that "Defendants' actions as alleged in striking and tying Plaintiff with ropes and in shining laser lights into her eyes deliberately and intentionally placed plaintiff in reasonable apprehension of harm."  SAC ¶ 125.  Stuart and Bailey argue that the factual allegations regarding contact with ropes during the animal walks and laser pointers being shined in Campbell's eyes on which Campbell bases her assault claim do not state that Stuart and Bailey actually performed the alleged actions. SAC ¶ 125.  The Court agrees.  The SAC alleges that Stuart and Bailey supervised Circus employees while the employees engaged in the actions. SAC ¶¶ 43, 48,

24

56, 58.  Supervision, however, is not enough, and the SAC does not allege that Stuart or Bailey "substantially assisted" the Circus employees in assaulting Campbell.

Because Campbell has not pleaded sufficient facts to support her claim for assault against Stuart or Bailey, the Court DISMISSES Campbell's assault claim.  Campbell asserts that she can add factual allegations to support her assault claims against Stuart and Bailey.  The Court therefore grants Campbell leave to amend her assault claim.

### B.       Motion to Strike

Defendants move to strike paragraphs 28, 31, 33, and 47 from the SAC.  Defendants argue that because the factual allegations in paragraphs 28, 31, 33, and 47 fall outside of the relevant statute of limitations, the allegations are immaterial and thus should be stricken.  Plaintiffs do not dispute that the factual allegations in paragraphs 28, 31, 33, and 47 fall outside of the statute of limitations for Plaintiffs' claims.  Plaintiffs respond that nevertheless allegations of acts outside of the statute of limitations are material to showing that Defendants have a policy and practice of harassment against Plaintiffs, that the allegations show Defendants' knowledge and intent, and that the allegations provide context for the Section 52.1 claim.

The allegations of actions before the statute of limitations are relevant to Plaintiffs' suit, especially given Plaintiffs' "practice or policy" theory of liability.  The Court therefore cannot say that the factual allegations "have no possible bearing on the subject matter of the litigation," such that striking the allegations is warranted.  *Brown v. Hain Celestial Group Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012).  Accordingly, the Court DENIES Defendants' motion to strike.

### IV.       CONCLUSION

The Court DISMISSES with leave to amend Plaintiffs' Article I, Section 2 claim; Campbell's IIED claim; Plaintiffs' battery claim against Bailey; and Campbell's assault claim against Bailey and Stuart.  The Court DENIES Defendants' motion to dismiss Campbell's Section 17200 claim; Plaintiffs' battery claims against Stuart; and Defendants' motion to strike.  The Court DENIES as moot Defendants' motion to dismiss Plaintiffs' negligent supervision claim in light of Plaintiffs' withdrawal of this claim.

United States District Court
For the Northern District of California

1      In light of the parties' agreement, the Court also DISMISSES Plaintiffs' claims against

2  James Dennis and Matthew Gillett.

3      The parties have also agreed that if the Court dismisses with leave to amend, Plaintiffs may

4  amend the complaint in line with this order and to add recent factual allegations but Plaintiffs agree

5  not to add new causes of action.  The Court adopts the parties' agreement.  Plaintiffs shall fourteen

6  days to file an amended complaint in line with this order and with the more recent factual

7  allegations that are the subject of Campbell's motion to supplement.  Plaintiffs shall not add any

8  new causes of action.  Thus, the Court DENIES as moot Campbell's motion to supplement.

9      At the last case management conference, Plaintiffs indicated that Plaintiffs wanted to

10  substitute a negligence claim for the negligent supervision claim, to which Defendants do not

11  agree.  ECF Nos. 118, 119.  Thus, Plaintiffs must file a motion for leave to amend the complaint to

12  add a negligence claim.

13  **IT IS SO ORDERED.**

14  Dated: October 4, 2013

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case Nos.: 12-CV-4233-LHK and 13-CV-0233-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART FELD ENTERTAINMENT INC., MIKE STUART,
AND DAVID BAILEY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California