*E-Filed: August 5, 2014*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHANNON CAMPBELL,<br><br>    Plaintiff,<br>  v.<br><br>FELD ENTERTAINMENT INC., (dba RINGLING BROS. AND BARNUM & BAILEY CIRCUS), RINGLING BROS. CIRCUS GENERAL MANAGER JAMES DENNIS, RINGLING BROS.CIRCUS OPERATIONS MANAGER MATTHEW GILLET, RINGLING BROS. DIRECTOR OF CIRCUS OPERATIONS MIKE STUART, RINGLING BROS. BLUE UNIT ASSISTANT GENERAL MANAGEER DAVID BAILEY and DOES 1 through 20, Jointly and Severally,<br><br>    Defendants.<br>_____/<br><br>MARK ENNIS,<br><br>    Plaintiff,<br>  v.<br><br>FELD ENTERTAINMENT INC., et al.,<br><br>    Defendants.<br>_____/ | No. C12-04233 LHK (HRL)<br>No. C13-00233 LHK (HRL)<br><br>**ORDER re DISCOVERY DISPUTE JOINT REPORT #1-#6**<br><br>**[Re: Docket Nos. 160, 162, 163, 165, 166, 177]** |

    Animal rights activists Shannon Campbell and Mark Ennis sue Feld Entertainment, Inc., doing business as Ringling Bros. and Barnum & Bailey Circus, and several employees thereof

(collectively, "FEI"), for assault, battery, and interference with their rights arising from numerous incidents in which Plaintiffs were allegedly harassed while protesting FEI's circus events. The parties have filed six Discovery Dispute Joint Reports ("DDJRs"), some of which were filed unilaterally by FEI and separately responded to. In all of them, FEI contends that Ennis, Campbell, and/or third party animal rights activists, including Joseph Cuviello, a plaintiff in a related case, failed to adequately respond to FEI's discovery requests. Also common to all the DDJRs is that they stem from a single thirty-minute in person meet and confer at the courthouse, which in view of the fact that each DDJR contains multiple issues, amounts to no more than a few minutes per issue. Clearly this does not comply with the requirement in the undersigned's Standing Order re: Civil Discovery Disputes that lead counsel shall meet in person "**for as long as and as often as is needed to reach full agreement**." (emphasis added). Nevertheless, where the parties have sufficiently narrowed the issues such that crafting a reasonable resolution to the dispute is feasible, the Court has attempted to do so. For other issues, however, the parties are ordered to further meet and confer in good faith and, if necessary, submit a new DDJR. The parties are admonished that any subsequently filed DDJRs which similarly fail to follow the letter and spirit of the undersigned's standing order will be summarily terminated.

A. Discovery Dispute Joint Report #1

FEI and Ennis dispute whether Ennis is required to: (1) produce videos and/or a list of videos responsive to several requests for production; (2) disclose the names of animal rights group Humanity Through Education ("HTE") members; and (3) provide information about his current and/or past employment. On the day this report was filed, Ennis made supplemental disclosures which he asserts satisfy many of FEI's complaints. FEI does not discuss the supplemental responses at length but notes that they appear to still be deficient.

1. Videos

FEI asserts that Ennis failed to produce and/or identify videos responsive to request nos. 2, 8-14, 24, and 37 of FEI's first set of requests for production.

      a. Request No. 2

2

FEI agreed to narrow its request to videos "referring to or showing the misconduct described in the operative complaint." After initially objecting to the requests as overbroad, Ennis' supplemental response indicates that he agreed to provide video recordings depicting the nine specific incidents of alleged harassment described in the complaint. The Court is satisfied that this supplemental production is adequate.

b. Request Nos. 8-14, and 24

Between these eight requests for production, FEI requests all videos that depict anything related to any defendant, that depict any HTE member protesting against any circus event, and/or that are referenced in the complaint. After asserting numerous objections, Ennis consistently responds that he "has identified specific dates and places that directly depict the claims in the operative complaint, and has agreed to produce whatever video he has that is responsive to that. . . . [I]f Defendants make specific requests, rather than broad sweeping ones, Plaintiff will consider those."

FEI argues that these videos are relevant to FEI's contention that Ennis and his animal rights colleagues incite altercations at the protests to manufacture claims against the circus. Ennis argues that FEI's theory is not a valid defense to any of Ennis' claims – assault, battery, or Ralph and Bane Act – therefore, the videos are merely impermissible character evidence, irrelevant to any valid claim or defense, and outside the scope of discovery. The Court disagrees with Ennis's contention that FEI's defense theory is categorically invalid. Moreover, while the videos depicting prior interactions between the parties may ultimately be excluded as impermissible character or prior acts evidence as Ennis suggests, they might just as easily be admitted for other purposes, such as motive, plan, preparation, knowledge, etc., or for impeachment. In any case, the videos need not be admissible to be discoverable; they must only appear reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b).

Ennis also asserts that FEI's requests are overbroad and unduly burdensome as he has apparently accumulated hundreds, if not thousands, of hours of video tapes in his years of activism. He insists that the only way to determine whether they depict any of the requested information is to watch all of the hundreds or thousands of hours of footage, which burden substantially outweighs

1 any marginal benefit the videos might provide to FEI. Thus, Ennis maintains that FEI must narrow
2 the scope of its requests. Ennis' premise implies that he has no idea what is on any of these video
3 tapes, which the Court finds doubtful, in part because he fails to explain how narrowing the requests
4 would eliminate this supposedly enormous burden to discover what is on them. In any event, while
5 the Court agrees with Ennis that the requests are overbroad, at this point FEI is only requesting an
6 order compelling Ennis to identify the videos in his possession pursuant to the parties' prior
7 agreement to exchange lists of videos identified by location and date. FEI asserts that it has
8 complied with that agreement, but Ennis now refuses. Tellingly, Ennis does not deny that he made
9 the agreement, nor does he indicate that producing the list would be burdensome. Accordingly, as
10 the Court finds FEI's proposal reasonable, particularly in view of the fact that Ennis previously
11 agreed to it, Ennis shall produce a list of videos identified by location and date.[1]

### c. Request Nos. 24 and 37

Similar to Request No. 2, Nos. 24 and 37 request videos referenced in the complaint and videos that relate to the claim of harassment as referenced in the complaint, respectively. Likewise, the Court thinks that Ennis' supplemental response agreeing to produce the videos depicting the nine specific incidents discussed in the complaint is sufficient.

### 2. Humanity Through Education (HTE) members

FEI requests "documents reflecting the identity of Humanity Through Education members and documents evidencing titles for each of those members in the Humanity Through Education organization." Ennis asserts his First Amendment privilege against compelled disclosure of political associations. *See Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2009) ("A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment *privilege*."); *Buckley v. Valeo*, 424 U.S. 1, 64 ("[W]e have repeatedly found that compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment."). "In [the Ninth] [C]ircuit, a claim of First Amendment privilege is subject to a two-party framework. The party asserting the privilege must demonstrate

---

[1] To be clear, the Court is not saying every video that will be on this list is discoverable and must be produced upon demand by FEI. Rather, the parties are advised to use other discussions in this Order as a guide for determining which videos are ultimately relevant for purposes of discovery.

… a prima facie showing of arguable first amendment infringement.  This *prima facie* showing requires [the party] to demonstrate that enforcement of [the discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry*, 591 F.3d at 1140 (third and fifth alterations in original) (citations omitted) (internal quotation marks omitted).  The burden then shifts to the party seeking discovery.  *Id.*  "Importantly, the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation – a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)."  *Id.* at 1141.

Ennis alleges in the complaint that FEI consistently harasses him and his colleagues for exercising their First Amendment rights, and he believes that disclosure of this information will lead to further harassment and have a chilling effect on the rights of HTE members.  He has made the requisite prima facie showing, and the burden shifts to FEI to show that the information is "highly relevant."  FEI asserts the individual members may have discoverable information as they may be part of Ennis' overall scheme to disrupt circus activities, and blocking this discovery will preclude FEI from developing its case.  The Court does not think that this speculation demonstrates that the information is highly relevant, at least not sufficient to outweigh the substantial First Amendment interests at stake.  Moreover, FEI notes that "there are only four members and they are witnesses," and Ennis maintains that he has fully complied with his obligations to disclose potential witnesses.  Thus, it appears that FEI already knows the information it seeks, or at least has less intrusive means of discovering it.  *See id.* ("[T]he information must be otherwise unavailable.")  Accordingly, the Court will not order Ennis to produce documents disclosing the identities of members of HTE and their titles.

3. Ennis' Employment

By interrogatory, FEI asks Ennis "to identify by title and employer all jobs that you held from January 1, 2008, to the present date."  FEI asserts that counsel initially agreed to make this disclosure, but Ennis now refuses.  FEI argues that the information will shed light on his activities and competences, as well as whether Ennis earns a living as a serial litigant who manufactures

5

1  claims. Ennis asserts a general right to privacy and believes that the question is intended solely to
2  harass him by contacting his current and past employers. Moreover, Ennis argues that if FEI wants
3  to know specific information about his income, activities, and competencies, they can ask him at his
4  deposition. The Court is not convinced by Ennis' objection and the requested information is within
5  the broad scope of discovery. Accordingly, Ennis shall respond to the interrogatory as narrowed by
6  FEI.

7  B. Discovery Dispute Joint Report #2 and #6

8  FEI unilaterally filed DDJR #2, which sought to compel Campbell to respond to
9  Interrogatory Nos. 6, 9-11, and 16. The parties recently jointly filed DDJR #6, which indicated that
10 they had resolved DDJR #2 with respect to Interrogatory Nos. 6, 9, and 16, but that Campbell's
11 responses to Nos. 9 and 10 remain in dispute. Interrogatory No. 9 requests the identities and contact
12 information for HTE members. For the same reasons discussed above with respect to Ennis, the
13 Court will not compel Campbell to respond.

14 Interrogatory No. 10 reads as follows: "Describe with specificity each communication about
15 any defendant in this case that you have had with any other animal rights organization or with any
16 member of any animal rights organization (other than Humanity Through Education)." Campbell
17 objects that this request is overly broad, burdensome, and harassing, and she asserts the First
18 Amendment privilege. Campbell alleges that FEI committed assaults against her while engaged in
19 protected free speech activity and that discovery of the requested communications would have a
20 significant chilling effect on her and other animal rights activists' constitutional rights to free speech
21 and association. Moreover, she argues that the request will only reveal entirely irrelevant yet
22 critically important communications, such the methods they employ to uncover FEI's abuse of
23 animals, which FEI seeks to use to its advantage outside this lawsuit. The Court finds that Campbell
24 has made the requisite prima facie showing, and the burden shifts to FEI to show that the
25 information sought is highly relevant and that FEI's interest therein outweighs the First Amendment
26 interests at stake. FEI asserts that this question is specifically designed to elicit statements made by
27 Campbell about FEI, which statements are admissible at trial as party admissions.

On balance, FEI's interest in the information responsive to this broad discovery request does not outweigh the First Amendment interests at stake. That is not to say that all communications between Campbell and any animal rights group must be protected, and the Court is open to the possibility that a significantly narrower request, together with an adequate showing by FEI that the information sought is highly relevant, may pass muster. *See Perry*, 591 F.3d at 1141 ("The request must also be carefully tailored to avoid unnecessary interference with protected activities . . . ."). As presently constituted, the Court will not compel Campbell to respond to the interrogatory.

C. Discovery Dispute Joint Report #3

FEI and pro se third party Cuviello submit DDJR #3 in which they dispute whether Cuviello must produce documents and video recordings in response to a subpoena. Cuviello is a plaintiff in a related suit involving similar allegations against FEI. Here, FEI alleges that Cuviello acted in concert with Campbell and Ennis to instigate these incidents in order to manufacture claims. FEI's subpoena requests production of videos, police reports and communications with government agencies, written communications with HTE members, and copies of social media webpages. Cuviello responded to the subpoena with the same objection for each document request, and he has not produced any material.

a. Videos: Request Nos. 1-3

FEI requests production of videos from 2008 to the present that depict any Ringling Bros. event or animal walk, any HTE protest thereof, or any Ringling Bros. personnel. Cuviello objects on basically the same grounds as Ennis did in DDJR #1. Again, the dispute before the Court is not whether Cuviello must actually produce the videos, but whether he must produce a list of the videos. Cuviello admits that he initially agreed to provide FEI with the list before he withdrew his agreement. For the same reasons discussed above with respect to Ennis, the Court orders Cuviello to produce the list as previously agreed.

b. Police Reports and Communications with Law Enforcement: Request Nos. 4-5

FEI requests all documents relating to communications that Cuviello has ever had with any municipality, law enforcement, and/or governmental agency relating to Ringling Bros. and/or the circus personnel thereof, as well as police reports regarding any Ringling Bros. event or personnel.

7

Cuviello objects that the requested materials are not relevant to any claim or defense for the same reasons argued by Ennis in DDJR #1. The Court thinks that the requested materials are relevant to this case only if they relate to the incidents referred to in the complaint or otherwise directly involve the parties in this case. Accordingly, Cuviello shall produce all such communications related to the incidents in the complaint as well as any police report filed by Campbell or Ennis as against FEI or its personnel.

### c. Communications with HTE Members: Request No. 6

For the same reasons discussed above with respect to DDJR #2 and #6, FEI's request for communications between Cuviello and HTE is not "carefully tailored to avoid unnecessary interference with protected activities." *Perry*, 591 F.3d at 1141. Accordingly, the Court will not compel Cuviello to respond to this document request in its current form.

### d. Social Media Webpages: Request Nos. 7-8.

FEI requests copies of all social media pages controlled by Cuviello that reference any Ringling Bros. event or any protest thereof. Cuviello only asserts that he already provided FEI with the internet links in another case. FEI reiterates that it is requesting actual copies of the webpages, which change over time, as opposed to links to the websites. FEI asserts that these documents are relevant because Campbell's complaint alleges that FEI used information gleaned from these websites to cause her emotional distress. Furthermore, FEI generally asserts that it is entitled to discover what statements plaintiffs and their colleagues have made on the internet about Ringling Bros.

The Court agrees insofar as those statements were made by the plaintiffs in this case, but discovery of any statement on any social media website made by any of the plaintiffs' colleagues about FEI goes too far. Accordingly, Cuviello shall produce copies of social media webpages he controls that reference any Ringling Bros. event or protest specifically referred to in the complaint, as well as those that reference any statement made by Campbell or Ennis about any Ringling Bros. event or protest thereof.

D. Discovery Dispute Joint Report #4

8

FEI's first set of requests for production of documents to Campbell contains fifty-one (51) requests. In DDJR #4, thirty-three (33) requests are in dispute.

The parties evidently have a long and contentious relationship, and as a result, they are extremely distrustful of one another and have hardly been cooperative in discovery. FEI appears to believe that because Campbell and Ennis are suing for alleged harassment, FEI is somehow entitled to discover every word any activist associated with Campbell or Ennis has ever uttered about any circus, regardless of potential relevance to the alleged harassment or any First Amendment considerations. On the other side, Campbell appears to view to the alleged incidents of harassment in a total vacuum, apropos of nothing, and cannot seem to fathom how this long history of animus might possibly be relevant to the alleged harassment. Both parties are overreaching as FEI's requests are overbroad and Campbell refuses to produce discoverable material. With few exceptions, the parties have not reasonably narrowed the issues in this DDJR in a manner that is presentable to the Court, and the Court does not have the resources to devote to crafting compromises for thirty-three separate requests for production on top of the parties' five other DDJRs. Accordingly, the Court offers the following few specific categories of materials that shall be produced, and the parties shall meet and confer in good faith to resolve their remaining disputes.

In response to FEI's seven requests for production of videos, Campbell only produced videos from the dates of the incidents specifically referred to in the complaint. However, as discussed above, this production ignores the fact that previous interactions between the parties are potentially relevant, and requests to produce videos depicting these previous interactions, albeit requests more narrowly tailored than FEI's are here, are reasonably calculated to discover admissible evidence. Accordingly, Campbell must produce videos depicting public protests of FEI circus events which were filmed by Campbell or Ennis or in which Campbell or Ennis appear. This compelled production does not necessarily discharge Campbell's obligation to produce videos in discovery, but if FEI seeks additional videos then it must make more specific requests.

FEI has apparently narrowed its requests regarding government communications to those "relating to any claim in this lawsuit, any similar claims against or about FEI and/or its personnel, any permit issues, and any cooperation by FEI or its personnel with any government agency." In

response, Campbell agrees to produce "all communications with any government official regarding any assault or battery relating to FEI or its employees." Campbell shall also produce communications relating to any permit issues and those relating to alleged cooperation by FEI or its personnel with any government agency, insofar as these issues are referenced in the complaint.

FEI makes several requests related to Campbell's social media pages, which Campbell references in her complaint. Campbell agrees to produce all Facebook pages referenced in the complaint. Campbell shall also produce "copies of such pages where she made disparaging comments about defendants" as requested by FEI in the DDJR.

With respect to Request Nos. 37 and 43-45, Campbell asserts that she has now produced or will produce all responsive documents.

As for the remaining requests at issue in this DDJR, the parties do not appear to have met and conferred in good faith to narrow the issues and present them to the Court such that they are capable of resolution, and the Court declines to address them. These issues may be the subject of a later DDJR which will be considered provided the parties scrupulously adhere to the undersigned's standing order.[2]

E. Discovery Dispute Joint Report #5

FEI served subpoenas on third parties Deniz Bolbol, Sherisa Anderson, and Keegan Kuhn requesting production of videos, police reports and other communications with government agencies, communications with HTE members, and copies of social media webpages – the requests are identical to those accompanying the Cuviello subpoena. For reasons already discussed, Bolbol, Anderson, and Kuhn shall produce the following:

- videos that depict the incidents described in the complaint as well as any public protests of FEI circus events that were filmed by Campbell or Ennis or in which Campbell or Ennis appear;
- all communications with government agencies related to the incidents in the complaint as well as any police report filed by Campbell or Ennis; and

---

[2] The parties are advised to ensure they have the most recent version of the undersigned's standing order, which is available at the Court's website: www.cand.uscourts.gov.

10

- copies of social media webpages controlled by the Third Parties that reference any Ringling Bros. event or protest specifically referred to in the complaint, as well as those that reference any statement made by Campbell or Ennis about any Ringling Bros. event or protest thereof.

F.  Conclusion

The production of all materials described above shall be completed within 14 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: August 5, 2014



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**United States District Court**
For the Northern District of California

**C12-04233 HRL Notice will be electronically mailed to:**

G. Whitney Leigh    whitney@leighlegal.com, alannah@leighlegal.com, lhepner@gonzalezleigh.com, lrivers@gonzalezleigh.com, mmoran@gonzalezleigh.com

Matthew A. Siroka    mas@defendergroup.com

Peter Harold Mason    peter.mason@nortonrosefulbright.com, cynthia.pacheco@nortonrosefulbright.com

Richard Tyler Atkinson    tatkinson@mcmanislaw.com, cmcclelen@mcmanislaw.com, eschneider@mcmanislaw.com, svannorman@mcmanislaw.com

Rubina Kazi    rkazi@mcmanislaw.com, cmcclelen@mcmanislaw.com, eschneider@mcmanislaw.com

Tarifa B Laddon    tarifa.laddon@nortonrosefulbright.com, mylene.ruiz@nortonrosefulbright.com

Todd Matthew Sorrell    todd.sorrell@nortonrosefulbright.com, mylene.ruiz@nortonrosefulbright.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**