UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SHANNON CAMPBELL, | ) | Case Nos.: 12-CV-04233-LHK |
| | ) | 13-CV-00233-LHK |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | ORDER DENYING PLAINTIFFS' |
| FELD ENTERTAINMENT, INC., et al., | ) | MOTION FOR PARTIAL SUMMARY |
| | ) | JUDGMENT, AND GRANTING IN |
| Defendants. | ) | PART AND DENYING IN PART |
| | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| | ) | |
| | ) | |
| MARK ENNIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| FELD ENTERTAINMENT, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiffs Shannon Campbell ("Campbell") and Mark Ennis ("Ennis") (collectively, "Plaintiffs") have brought a diversity action against defendants Feld Entertainment, Inc. ("FEI"), operator of the Ringling Bros. and Barnum & Bailey Circus ("Circus"); Michael Stuart ("Stuart"); and David Bailey ("Bailey") (collectively, "Defendants") for alleged violations of state law and common law torts.

Before the Court are the parties' cross-motions for summary judgment.  Specifically, the Court addresses Defendants' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, ECF No. 187[1] ("Defs.' Mot."), and Plaintiffs' Motion for Partial Summary Judgment, ECF No. 188 ("Pls.' Mot.").

Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment, and GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment.

## I.    BACKGROUND

### A.    Factual Background

This lawsuit is but the latest in a decade-long series of legal disputes involving the Circus and Humanity Through Education ("HTE"), a San Francisco Bay Area animal rights organization that protests the treatment of Circus animals.[2]  *See* ECF No. 189, Declaration of Mark Ennis ("Ennis Decl.") ¶¶ 3-4; ECF No. 194, Corrected Declaration of Shannon Campbell ("Campbell Decl.") ¶ 3.  When the Circus comes to northern California, Plaintiffs, who are members of HTE, hold signs and banners and offer informational leaflets about what Plaintiffs consider to be the mistreatment of Circus animals.  Ennis Decl. ¶ 3; Campbell Decl. ¶ 5.  Plaintiffs also videotape the animals and their handlers for the purpose of educating the public about how the animals are treated.  Ennis Decl. ¶ 3; Campbell Decl. ¶ 5.  Campbell, for her part, has been leafleting patrons of the Circus for six years and videotaping its treatment of animals for five years.  Campbell Decl. ¶ 4.  Ennis has been engaged in protest activities for about fourteen years.  Ennis Decl. ¶ 8.

The Circus generally comes to the San Francisco Bay Area every August and September. ECF No. 84-1, Declaration of David Bailey ("Bailey Decl.") ¶ 2; ECF No. 84-3, Declaration of

---

[1] Unless otherwise indicated, all ECF references are from the docket of No. 12-04233.

[2] *See, e.g.*, *Cuviello v. Feld Entm't, Inc.*, No. 13-03135 (N.D. Cal.); *Cuviello v. City & Cnty. of S.F.*, No. 12-03034 (N.D. Cal.); *Bolbol v. Feld Entm't, Inc.*, No. 11-05539 (N.D. Cal.); *Cuviello v. Cal Expo*, No. 11-02456 (E.D. Cal.); *Ennis v. City of Daly City*, No. 09-05318 (N.D. Cal.); *Cuviello v. City of Oakland*, No. 09-02955 (N.D. Cal.); *Bolbol v. City of Daly City*, No. 09-01944 (N.D. Cal.); *Cuviello v. City of Oakland*, No. 06-05517 (N.D. Cal.); *Bolbol v. Ringling Bros. & Barnum & Bailey Circus*, No. 04-00082 (N.D. Cal.).

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   Michael Stuart ("Stuart Decl.") ¶¶ 2, 7.  A few days before the first performance, FEI brings the

2   animals via railroad to the city in which they are performing and then walks them, accompanied by

3   a police escort, from the railroad to the Circus venue (the "animal walk").  ECF No. 205-1,

4   Deposition of Michael Stuart ("Stuart Dep.") at 16, 202-03.  FEI reverses the process following the

5   last performance.  *Id.* at 16.  In the interim, the animals are kept in a compound, typically in the

6   parking lot adjacent to the arena where the Circus is performing.  ECF No. 205-2, Deposition of

7   David Bailey ("Bailey Dep.") at 31-33.  Plaintiffs and other members of HTE videotape the

8   animals during the walks and while the animals remain in the compound.  Ennis Decl. ¶ 12;

9   Campbell Decl. ¶ 8.  In 2007, FEI employees began using long ropes to form a moving barrier

10  separating the general public from the animals and their handlers as they walk to and from the

11  Circus venue.  Stuart Dep. at 49, 114-15; Stuart Decl. ¶¶ 9-12.  Since August 2012, however, FEI

12  has not performed animal walks in northern California.  Stuart Dep. at 180, 207.

13          Plaintiffs allege that Defendants have a "policy and practice . . . to intentionally interfere

14  with Plaintiffs' free speech rights" at the animal walks.  ECF No. 158, Fourth Amended

15  Consolidated Complaint ("FACC") ¶ 29 (internal quotation marks omitted).  In particular,

16  Plaintiffs assert that over the past several years Defendants have harassed them and interfered with

17  their ability to videotape the animals.  *Id.* ¶¶ 30-32.  Defendants' alleged misconduct takes three

18  general forms: (1) using ropes during the animal walks to harass Plaintiffs and interfere with their

19  videotaping; (2) shining lights into Plaintiffs' cameras; and (3) physical and verbal assaults on

20  Plaintiffs while they are videotaping.  *Id.*  Defendants' misconduct, Plaintiffs allege, spans five

21  incidents over the past several years.[3]  The Court briefly recounts each.

22  _____

23          [3] Plaintiffs' FACC and their subsequent declarations refer to additional incidents of alleged
    misconduct.  Plaintiffs have confirmed, however, that the Stockton 2007, Oakland 2008, Oakland

24  2009, and Daly City 2011 incidents are not at issue.  ECF No. 201 ("Pls.' Opp.") at 8.  Plaintiffs'
    motion papers also abandon any allegations arising out of the San Jose 2013 incident, for which the

25  Court granted Campbell leave to supplement her complaint.  *See* ECF No. 154 at 21.  In addition,
    Defendants argue that Plaintiffs have surrendered any claims arising out of the Oakland 2010

26  incident because Plaintiffs failed to raise the incident in their opposition.  *See* ECF No. 208
    ("Defs.' Reply") at 3.  However, because Plaintiffs discuss the Oakland 2010 incident in both their

27  partial summary judgment motion and their reply, *see* Pls.' Mot. at 18-20; ECF No. 209 ("Pls.'
    Reply") at 3, the Court will consider Plaintiffs' claims arising out of that incident, *see Davis v. City*

28

                                                        3

**United States District Court**
For the Northern District of California

### 1.  Oakland 2010

On August 12, 2010, Campbell alleges that FEI employees "shined a laser pointer" into her camera and eyes while she was attempting to videotape the treatment of Circus animals.  Campbell Decl. ¶¶ 19-20; *see* Ex. C to Campbell Decl. (video clip showing the incident).  Campbell claims that her vision was affected for a "short period," perhaps "five to ten minutes," after the light was flashed in her eyes.  Campbell Dep. at 196-97; *cf.* Campbell Decl. ¶ 19 (stating that her vision was impaired for "10-15 minutes afterward").  She did not suffer physical injury or seek medical attention as a result.  Campbell Dep. at 197, 216.  Throughout the incident, Campbell says she was standing at the entrance to the Oakland arena's north tunnel, an area from which she was permitted to videotape.[4]  Campbell Decl. ¶ 19.

### 2.  San Jose 2011

On August 16, 2011, Ennis states that he was filming an animal walk in San Jose.  Ennis Decl. ¶ 16.  As the procession passed through the arena's parking lot, Ennis walked ahead to get a better view of the elephants entering the fenced area where they would be kept.  *Id.*  At that point, Ennis alleges that an FEI employee directed the rope holders to wrap the rope around a lamppost where Ennis was standing, thereby blocking his path.  *Id.* ¶ 17; *see* Ex. A to Ennis Decl., Clip 6 (video clip showing the incident).  Without prior notice or his consent, Ennis claims, the rope was

_____

*of Las Vegas*, 478 F.3d 1048, 1058-59 (9th Cir. 2007) (finding no abandonment for purposes of appeal where plaintiff "did not oppose summary judgment as to the battery claim" but "fil[ed] his own motion for partial summary judgment in which he sought summary judgment as to the battery claim").

[4] A federal injunction, according to Plaintiffs, provides the basis for approval.  *See Cuviello v. City of Oakland*, No. C 06-05517 MHP EMC, 2007 WL 2349325, at *8 (N.D. Cal. Aug. 15, 2007) (granting an injunction allowing activists "to stand at or near the railway of the [Oakland arena's] north ramp landing in order to photograph or videotape circus animals").  Plaintiffs ask the Court to take judicial notice of (1) then-Magistrate Judge Chen's Report and Recommendation advising that the injunction be modified; (2) Judge Patel's adoption of the Report and Recommendation; (3) FEI's motion to intervene in that case; and (4) FEI's opposition to the plaintiffs' motion in that case for an order to show cause why FEI should not be held in contempt.  *See* ECF No. 190.  The Court GRANTS Plaintiffs' request as to all these documents because they are matters of public record not subject to reasonable dispute.  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014) (explaining that "[p]roper subjects of judicial notice" include "court documents already in the public record and documents filed in other courts" (citing *Holder v. Holder*, 305 F.3d 854 866 (9th Cir. 2002)).

4

United States District Court
For the Northern District of California

1    wrapped around him and pulled tight for about a minute as he filmed.  Ennis Decl. ¶ 17; Ennis Dep.

2    at 83.  However, according to Stuart, then director of circus operations, Ennis simply "walked into"

3    the rope on his own.  Stuart Dep. at 10, 74-75.  Ennis claims that the incident was "uncomfortable

4    and embarrassing."  Ennis Decl. ¶ 17.

5                    **3.  Fresno 2012**

6            On July 8, 2012, Ennis says he was attempting to film Circus animals as they entered the

7    Fresno arena.  Ennis Decl. ¶ 18; Ennis Dep. at 228-29.  Standing behind a wall on a public

8    sidewalk, Ennis mounted his camera atop a monopod so that he could film down into the area

9    where he anticipated the animals would be brought.  Ennis Dep. at 227, 234-35.  According to

10   Ennis, several uniformed Circus performers threw sticks and ice at his camera.  Ennis Decl. ¶ 18;

11   *see* Ex. A to Ennis Decl., Clips 11-13 (video clips showing the incident).  One of the sticks hit

12   Ennis's camera, while another caromed off a nearby pillar and struck him in the shoulder.  Ennis

13   Dep. at 228, 235.  Ennis, however, suffered no physical injury as a result.  *Id.* at 235.

14                   **4.  Oakland 2012**

15           On August 7, 2012, Plaintiffs traveled to Oakland to videotape a nighttime animal walk

16   from the Circus train to the arena.  Ennis Decl. ¶ 19; Campbell Decl. ¶ 11.  Campbell claims that

17   "Defendants persistently interfered with [her] ability to walk along Baldwin Street as [she]

18   videotaped" the animal walk, and that "Defendants forcibly blocked the natural flow of pedestrian

19   traffic on the public street using their bodies and ropes."  Campbell Decl. ¶ 14.  Campbell alleges

20   that FEI employees "yell[ed]" at her several times to "get up on the sidewalk," even though no

21   sidewalk existed.  *Id.*; *see* Ex. A to Campbell Decl. (video clip showing the incident).  After being

22   forced onto a "rocky uneven surface," Campbell says that Stuart approached her at close range,

23   contacted her with his body, and told her that she was "into the rope" and to get on the sidewalk.

24   Campbell Decl. ¶ 14; Campbell Dep. at 113.  In response, Campbell told Stuart he did not have

25   "any fucking right" to touch her with his body.  Campbell Dep. at 110.  Campbell then complained

26   that Stuart had no right to put his hands on her; but when Stuart asked her whether he had done so,

27   Campbell responded "more accurately" that Stuart had "pushed his body against [hers]."  Campbell

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    Decl. ¶ 14; *see also* Campbell Dep. at 113 (testifying that Stuart's "stomach [was] protruding, and

2    that's what he was pushing against me").  Stuart denies ever making contact with Campbell.  Stuart

3    Dep. at 55.

4         After another minute had passed, Campbell told a different FEI employee, "Get your hands

5    off me!" to which the employee replied, "My hands are not on you."  Campbell Decl. ¶ 14.

6    Campbell then responded, "Your body is pushing against me; you're not allowed to do that."  *Id.*

7    Another minute or so later, Stuart told members of the crowd that the area behind the Oakland

8    arena's Baldwin Street entrance was private property and, according to Campbell, he then "use[d]

9    his body to physically block" some of the spectators from proceeding.  *Id.*  As the crowd

10   approached the narrowing entrance, Campbell alleges that she was sandwiched between metal

11   barricades.  *Id.* ¶ 15.  Forced to jump over one of them, Campbell claims that she sustained a bruise

12   on her leg that lasted approximately one month.  *Id.*  She did not seek any medical care for the

13   bruise.  Campbell Dep. at 135.

14        Ennis, on the other hand, claims that as the procession approached the Baldwin Street

15   entrance, which Plaintiffs claim was open to the public, Ennis was told by Stuart and a security

16   guard that the area was private property and that he could not go any further.  Ennis Decl. ¶ 20; *see*

17   Ex. A to Ennis Decl., Clips 8-10 (video clips showing the incident).  After protesting that the

18   entrance was open to the public and attempting to proceed, Ennis alleges that Stuart "blocked

19   [Ennis] with his body," "push[ed] his stomach against [Ennis's]," and "reached over and hit

20   [Ennis] in the back."  Ennis Decl. ¶ 20.  Ennis later testified, however, that rather than grabbing

21   him, "[Stuart] just like put his hand on [him]."  Ennis Dep. at 265.  In any event, Ennis claims that

22   he did not consent to being touched, and that he found Stuart's actions offensive.  *Id.*  Stuart, for

23   his part, testified that a police officer had told him the area behind the Baldwin Street entrance was

24   not open to the public and that no part of his body ever touched Ennis's.  Stuart Dep. at 55, 78,

25   147-48.

26        **5.  San Jose 2012**

27

28
                                               6

**United States District Court**
For the Northern District of California

1    On August 18, 2012, Ennis alleges that an unknown FEI employee "purposely walked into

2    [him]" while Ennis was using a monopod to videotape animals over the back gate at the San Jose

3    arena.  Ennis Decl. ¶ 21; Ennis Dep. at 307-08; *see* Ex. A to Ennis Decl., Clip 1 (video clip

4    showing the incident).  After the contact, Ennis claims that a security guard opened the gate and let

5    the employee inside.  Ennis Dep. at 308.  Only then did the security guard, according to Ennis, tell

6    Ennis that he had been blocking the gate.  *Id.* at 324.  Ennis suffered no physical injury as a result

7    of the incident.  *Id.* at 313.

8    **B.      Procedural History**

9    On August 10, 2012, Campbell filed her initial Complaint, ECF No. 1, and on January 17,

10   2013, Ennis filed his, No. 13-00233, ECF No. 1.  After a round of amended complaints, the Court

11   ordered the two cases consolidated on June 18, 2013.  ECF No. 70.

12   On July 9, 2013, Plaintiffs filed a Second Amended Consolidated Complaint ("SACC"),

13   ECF No. 73, which Defendants moved to dismiss and/or strike on August 12, 2013, ECF No. 94.

14   On October 4, 2013, the Court granted the motion in part and denied it in part.  ECF No. 120.  On

15   October 21, 2013, Plaintiffs filed a Third Amended Consolidated Complaint ("TACC"), ECF No.

16   124, which Defendants again moved to dismiss and/or strike on November 4, 2013, ECF No. 126.

17   Defendants argued in their motion that the Court should dismiss Plaintiffs' free speech claims

18   based on Article I, Section 2 of the California Constitution.  ECF No. 126 at 5-12.

19   On April 7, 2014, the Court amended its order from October 4, 2013, clarifying that

20   "control of property" is insufficient to transform a private party's conduct into state action for

21   purposes of the California Constitution.  ECF No. 154; *see* ECF No. 155 at 11 n.4 (explaining the

22   reason for amending the Court's prior order).  That same day, the Court granted with prejudice

23   Defendants' Motion to Dismiss Plaintiffs' claims based on Article I, Section 2 of the California

24   Constitution.  ECF No. 155 at 15.  The Court did so because "Article I, Section 2 includes a state

25   actor limitation" and "Defendants are not state actors" under the meaning of that provision.  *Id.* at

26   9, 13 (internal quotation marks omitted).

27

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

On April 16, 2014, Plaintiffs filed their FACC, naming FEI, Stuart, and Bailey as defendants.[5]  ECF No. 158 at 1.  In the FACC, Plaintiffs each asserted several causes of action, all under California law, arising out of the five incidents detailed above.  Specifically, Campbell alleged eight causes of action: (1) unlawful business practices in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) violations of the Ralph Act, Cal. Civ. Code § 51.7; (3) violations of Article I, Section 2(a) of the California Constitution; (4) violations of the Bane Act, Cal. Civ. Code § 52.1; (5) claims for injunctive relief due to harassment, Cal. Civ. Proc. Code § 527.6(a)-(b); (6) intentional infliction of emotional distress ("IIED"); (7) assault; and (8) battery.  FACC ¶¶ 91-132.  Ennis, by comparison, brought five causes of action: (1) violations of the Ralph Act, Cal. Civ. Code § 51.7; (2) violations of Article I, Section 2(a) of the California Constitution; (3) violations of the Bane Act, Cal. Civ. Code § 52.1; (4) claims for injunctive relief due to harassment, Cal. Civ. Proc. Code § 527.6(a)-(b); and (5) battery.  FACC ¶¶ 96-116, 126-32.

On September 25, 2014, Defendants filed their Motion for Summary Judgment or, Alternatively, Partial Summary Judgment.  Defs.' Mot. at 24.  The following day, Plaintiffs filed their Motion for Partial Summary Judgment.  Pls.' Mot. at 26.  Although Plaintiffs' motion was untimely, the Court agreed to consider the late-filed brief.  ECF No. 199.  Plaintiffs opposed Defendants' motion on October 9, 2014, Pls.' Opp. at 22, while Defendants opposed Plaintiffs'

---

[5] The FACC also named James Dennis ("Dennis"), Matthew Gillet ("Gillet"), and Tripp Gorman ("Gorman") as defendants.  Dennis and Gillet, however, have already been dismissed and stricken from previous complaints.  *See* ECF No. 154 at 26 (dismissing Dennis and Gillet from the SACC pursuant to the parties' agreement); ECF No. 155 at 14-15 (striking Dennis and Gillet from the TACC).  Gorman, on the other hand, was never properly served with process.  *See* ECF No. 181; *see also* ECF No. 186 (Clerk declining default against Gorman).  Plaintiffs do not argue otherwise.  Plaintiffs have also abandoned their claims arising out of Gorman's conduct by failing to mention any such claims in their motion papers.  *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 (9th Cir. 2005) (per curiam) (noting that a party abandoned claims not defended in opposition to a motion for summary judgment).  Accordingly, the Court sua sponte STRIKES any references in the FACC to Dennis, Gillet, and Gorman.  *See* Fed. R. Civ. P. 12(f)(1) (permitting the Court "on its own" to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter").

8

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    motion on October 10, 2014, ECF No. 206 ("Defs.' Opp.") at 26.  Defendants replied on October

2    16, 2014.  ECF No. 208 ("Defs.' Reply") at 16.  So too did Plaintiffs.  Pls.' Reply at 17.

3    **II.**      **LEGAL STANDARD**

4          Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

5    inferences in the light most favorable to the nonmoving party, there are no genuine disputes of

6    material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

7    *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  At the summary judgment stage, the Court

8    "does not assess credibility or weigh the evidence, but simply determines whether there is a

9    genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).  A fact is "material" if

10    it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact

11    is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the

12    nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the evidence is

13    merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

14          The moving party bears the initial burden of identifying those portions of the pleadings,

15    discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*,

16    477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must

17    affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

18    party.  *Id.* at 322-23.  But on an issue for which the opposing party will have the burden of proof at

19    trial, the party moving for summary judgment need only point out that "the nonmoving party has

20    failed to make a sufficient showing on an essential element of her case with respect to which she

21    has the burden of proof." *Id.* at 323.  Once the moving party meets its initial burden, the

22    nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts

23    showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

24          When, as here, the parties have filed cross-motions for summary judgment, the Court

25    "review[s] each motion for summary judgment separately, giving the nonmoving party for each

26    motion the benefit of all reasonable inferences." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty.*

27    *Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008).  In so doing, the Court "must consider each

28

9

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC*

2    *v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

3    **III.    DISCUSSION**

4            Having reviewed the various motion papers, it has become clear to the Court that Plaintiffs

5    no longer assert three causes of action listed in their FACC: Plaintiffs' claims under Article I,

6    Section 2(a) of the California Constitution; Plaintiffs' claims under section 527.6 of the California

7    Code of Civil Procedure; and Campbell's claim for IIED.  For the reasons stated in Part III.A,

8    *infra*, the Court GRANTS summary judgment as to these three causes of action.  As a result, the

9    following causes of action remain at issue: (1) Plaintiffs' Ralph Act claims; (2) Plaintiffs' Bane Act

10   claims; (3) Plaintiffs' battery claims; (4) Campbell's assault claim; and (5) Campbell's UCL claim.

11   For the reasons stated in Parts III.B-F, *infra*, the Court GRANTS in part and DENIES in part

12   Defendants' summary judgment motion as to Plaintiffs' Ralph Act and Bane Act claims.  The

13   Court DENIES Plaintiffs' motion as to those claims.  The Court also DENIES both Defendants'

14   and Plaintiffs' summary judgment motions as to Plaintiffs' battery claims and Campbell's assault

15   and UCL claims.

16           **A.    Plaintiffs' Abandoned Claims**

17           To begin, the Court has already dismissed with prejudice Plaintiffs' claims based on Article

18   I, Section 2(a) of the California Constitution.  ECF No. 155 at 15.  The parties also stipulated as

19   much.  *See* ECF No. 159.  To the extent necessary, then, the Court GRANTS summary judgment in

20   favor of Defendants as to Plaintiffs' cause of action arising out of Article I, Section 2(a) of the

21   California Constitution.

22           Additionally, Plaintiffs have abandoned their claims for injunctive relief under section

23   527.6 of the California Code of Civil Procedure, and Campbell has abandoned her claim for IIED.

24   Plaintiffs make no argument in support of either cause of action in their opposition to Defendants'

25   motion.  *See generally* Pls.' Opp.  Plaintiffs do not even mention them.  Nor do Plaintiffs mention

26   them in connection with their own summary judgment motion.  *See generally* Pls.' Mot.; Pls.'

27   Reply.  Although "summary judgment is not properly granted simply because there is no

28

                                                      10

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

opposition," *Atilano v. Cnty. of Butte*, No. CIV. S070384 FCDKJM, 2008 WL 4078809, at *6 (E.D. Cal. Aug. 29, 2008) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993)), a court "has no obligation to search the entire case file for evidence that establishes a genuine issue of fact when the nonmovant presents inadequate opposition to a motion for summary judgment," *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136-37 (9th Cir. 2001).  Concerning section 527.6, which provides permanent injunctive relief for persons who have "suffered harassment," Cal. Civ. Code § 527.6(a)(1), there is no evidence that Plaintiffs have endured the type of harassment covered by the statute.  As in a similar case involving HTE members protesting animal walks, "Section 527.6 addresses harassment of a personal nature, such as incidents of stalking or invasions of privacy, and Plaintiffs' allegations do not describe that type of harassment."  *Bolbol v. Feld Entm't, Inc.* (*Bolbol II*), No. C 11-5539 PSG, 2013 WL 257133, at *12 (N.D. Cal. Jan. 23, 2013); *see* Cal. Civ. Code § 527.6(b)(1)-(3).

Concerning Campbell's claim for IIED, Plaintiffs have abandoned their argument regarding defendant Tripp Gorman ("Gorman") or the San Jose 2013 incident where Gorman allegedly taunted Campbell with references to her deceased sister.  *See supra* note 3; FACC ¶¶ 71-76, 118-19.  Gorman, who was never properly served with process, is also no longer a defendant in this case.  *See supra* note 5.  Beyond the Gorman allegations, there is no evidence that Defendants' conduct toward Campbell was "so extreme as to exceed all bounds of that usually tolerated in a civilized community," as required to state a claim for IIED.  *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009).

As Defendants have demonstrated the absence of a genuine dispute of material fact regarding these two claims, summary judgment is appropriate.  *See Anderson*, 477 U.S. at 252 (explaining that "there must be evidence on which the jury could reasonably find for the plaintiff" in order to survive summary judgment); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) (affirming a district court's grant of summary judgment in defendants' favor "because Ramirez abandoned his state law claims by not addressing them in either his Motion for Partial Summary Judgment or his Opposition to Defendants' Motion for Summary Judgment").

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   Accordingly, the Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' cause

2   of action arising out of section 527.6 of the California Code of Civil Procedure and GRANTS

3   summary judgment in favor of Defendants as to Campbell's cause of action for IIED.

### B.   Plaintiffs' Ralph Act Claims

5        The Ralph Act guarantees people in California "the right to be free from any violence, or

6   intimidation by threat of violence, committed against their persons or property because of political

7   affiliation, or on account of any [listed] characteristic." Cal. Civ. Code § 51.7(a).  This statute,

8   along with the Bane Act, was enacted to "provide a civil remedy for hate crimes." *D.C. v.*

9   *Harvard-Westlake Sch.*, 176 Cal. App. 4th 836, 844 (2009); *accord Ramirez v. Wong*, 188 Cal.

10  App. 4th 1480, 1486 (2010).  To prevail on their Ralph Act claims, Plaintiffs must establish four

11  elements: (1) Defendants committed or threatened violent acts against Plaintiffs; (2) Defendants

12  were motivated by their perception of Plaintiffs' political affiliation; (3) Plaintiffs were harmed;

13  and (4) Defendants' conduct was a substantial factor in causing Plaintiffs harm. *See Knapps v. City*

14  *of Oakland*, 647 F. Supp. 2d 1129, 1167 (N.D. Cal. 2009) (citing *Austin B. v. Escondido Union*

15  *Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007)).

16       As to the first prong, the Ralph Act requires "violence, or intimidation by threat of

17  violence." Cal. Civ. Code § 51.7(a).  True, "there is no requirement that the violence be extreme or

18  motivated by hate." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1289 (9th

19  Cir. 2001).  "[T]he plain meaning of the word 'violence,'" however, "clearly involves some

20  physical, destructive act." *OSJ PEP Tenn. LLC v. Harris*, No. CV 14-03741 DDP MANX, 2014

21  WL 4988070, at *5 (C.D. Cal. Oct. 7, 2014) (interpreting the word "violence" in the Bane Act

22  context).  Violence, contrary to Plaintiffs' assertion, demands more than "mere[] application of

23  physical force." Pls.' Mot. at 5.  The cases Plaintiffs cite for that proposition are neither Ralph Act

24  nor Bane Act cases, and, in any event, they suggest that violence in other contexts refers to the

25  *unreasonable* use of physical force, not just any use. *See People v. Bamba*, 58 Cal. App. 4th 1113,

26  1123 (1997) ("In the context of [California's false imprisonment statute], 'violence' means the

27  exercise of physical force used to restrain over and above the force reasonably necessary to effect

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    such restraint" (internal quotation marks omitted)); *People v. Bravot*, 183 Cal. App. 3d 93, 97

2    (1986) (explaining that "violence" in the context of California's felonious escape statute "mean[s]

3    any *wrongful* application of physical force" (emphasis added)).

4          In *Winarto*, for example, the Ninth Circuit found sufficient evidence to support a jury's

5    finding of violence under the Ralph Act where the trial had "established beyond dispute that

6    [defendant] kicked Winarto at least once." 274 F.3d at 1289.  The court there also found sufficient

7    evidence of a threat of violence where Winarto's co-worker, a defendant, had "kicked her or

8    feigned kicking her on many other occasions," and where he had once "approached Winarto from

9    behind in a stairwell, and threatened her, saying, 'chick, you better walk faster or I am going to hurt

10   you again.'"  *Id.* at 1289-90; *see also Rodriguez v. Cnty. of Contra Costa*, No. C 13-02516 SBA,

11   2013 WL 5946112, at *6 (N.D. Cal. Nov. 5, 2013) (finding plausible allegations of violence under

12   the Ralph Act where "Defendants' officers arrived on scene with their guns drawn, while taunting

13   Plaintiff and insulting him and ordering him to remain on the ground as he was being viciously

14   attacked by a police dog").  By contrast, in *Corales v. Bennett*, 567 F.3d 554, 564, 570-71 (9th Cir.

15   2009), the Ninth Circuit rejected the Ralph Act claims of middle school students where their vice

16   principal "did not express any intent to commit any act of unlawful violence or to inflict bodily

17   harm upon the students."  The vice principal's threats of "police involvement, a $250 fine, and a

18   juvenile hall sentence" for the students' truancy were insufficient to survive summary judgment.

19   *Id.* at 559, 571; *see also Ramirez*, 188 Cal. App. 4th at 1486 (finding "no 'threat of violence'

20   without some expression of intent to injure or damage plaintiffs or their property").

21          Viewing the evidence in the light most favorable to Plaintiffs, the Court finds no triable

22   issues of fact as to whether Defendants committed or threatened violence against Campbell during

23   the Oakland 2010 incident and against Ennis during the San Jose 2011 and Fresno 2012 incidents.

24   In contrast, the Court does find a genuine issue of material fact as to whether Defendants

25   committed or threatened violence against Plaintiffs at the Oakland 2012 incident and against Ennis

26   at the San Jose 2012 incident.

27              **1.  Oakland 2010**

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    As to Oakland 2010, Campbell alleges that some kind of light, perhaps a laser pointer, was

2 shone at her camera and into her eyes while she was attempting to film Circus animals at night.

3 Campbell Decl. ¶¶ 19-20; Campbell Dep. at 194-96.  The green light, according to Campbell,

4 blurred her vision for a "short period," Campbell Dep. at 196-97, but Campbell offered conflicting

5 accounts of how long the blurriness lasted, *compare id.* at 197 (five to ten minutes), *with* Campbell

6 Decl. ¶ 19 (ten to fifteen minutes).  Campbell admits she suffered no physical injury.  Campbell

7 Dep. at 216.

8    The undisputed video evidence confirms the absence of a genuine issue as to whether

9 Defendants committed or threatened violence against Campbell.  *See* Ex. C to Campbell Decl.  The

10 video begins by showing Campbell standing alone and filming a structure, presumably the Oakland

11 arena, some distance away, and a green light constantly moving in seemingly random, circular

12 patterns and intermittently landing on Campbell's video camera for a split second.  The video then

13 shows that the source of the green light is inside the structure Campbell is filming and that the

14 green light is coming out of the structure through a gap between a door in the structure and its

15 doorframe.  The green light is constantly moving in seemingly random, circular patterns and lands

16 momentarily on passersby walking outside the structure.  The scene outside the structure is quiet

17 and calm.  Only the intermittent voices of the passersby can be heard on the video.  None of these

18 conversations is directed at Campbell.  Although physical injury is not a requirement where

19 violence is merely threatened, Campbell's admission that she suffered no injury further supports

20 the Court's conclusion.  *See* Campbell Dep. at 216.

21    In sum, there is no evidence of violence or intimidation by threats of violence under the

22 meaning of the Ralph Act.  The video shows no "physical, destructive act" was ever perpetrated or

23 threatened against Campbell.  *OSJ PEP Tenn.*, 2014 WL 4988070, at *5; *see also Bolbol v. City of*

24 *Daly City* (*Bolbol I*), 754 F. Supp. 2d 1095, 1102, 1117 (N.D. Cal. 2010) (granting summary

25 judgment to defendants on Ralph Act claim where officer with an alleged "history of harassing

26 animal-rights activists" at the circus "took hold of [an activist's] hand that held the camera and

27

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

began to hit the hand against the vehicle" and "held [the activist's] hand in a 'pain-compliance'

hold for approximately 15-20 minutes until additional [] officers arrived on the scene").

As Defendants have shown there is no genuine dispute as to an essential element of a Ralph

Act cause of action—namely, whether violence was committed or threatened—the Court GRANTS

Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion as to

Campbell's Ralph Act claim arising out of the Oakland 2010 incident.

### 2.  San Jose 2011

As to San Jose 2011, Ennis alleges that the rope barrier was pulled against his body and that

he found the incident "uncomfortable and embarrassing."  Ennis Decl. ¶ 17; *see also* Ennis Dep. at

92-93 (considering it a threat or intimidation whenever the rope touches him).  The video shows

Ennis in broad daylight following and filming with his monopod a procession of elephants being

led into a fenced-in holding area.  *See* Ex. A to Ennis Decl., Clip 6.  Ennis settles on a position to

the right of a lamppost to film the holding area by raising his monopod high in the air.  FEI

employees hold a rope between Ennis and the elephants.  The rope is to the right of Ennis near the

bottom of his right leg.  After showing the elephants entering the holding area, the video pans back

to Ennis, who has moved a couple feet away from the lamppost.  The rope barrier has been

extended to run along the left side of the lamppost and is wrapped around the lamppost.  Ennis

stands to the right of the lamppost.  Giving Ennis the benefit of the doubt, although the video does

not show it, one can infer that the rope may rest against some portion of the right side of Ennis's

shirt.  Ennis is filming the elephants throughout the video.  The FEI employees holding the rope are

several feet away from Ennis and are not paying Ennis any attention.  No one speaks to Ennis on

the video.  The video does not show the rope being wrapped around Ennis's torso, as Ennis claims.

*See* Ennis Decl. ¶ 17.  Nor does the video show FEI employees "pulling the rope taut" against

Ennis.  *Id.*  The scene is calm and largely quiet.  Ennis never shows the slightest indication of

discomfort, embarrassment, or fear.  Though injury is not a requirement, Ennis alleges none as a

result of this incident.  *See* Ennis Decl. ¶¶ 16-17.

1    Once again, there is no evidence of violence or intimidation by threats of violence under the

2    meaning of the Ralph Act.  The undisputed video evidence shows no "physical, destructive act"

3    was ever perpetrated or threatened against Ennis.  *OSJ PEP Tenn.*, 2014 WL 4988070, at *5; *see*

4    *also Bolbol I*, 754 F. Supp. 2d at 1102, 1117 (granting summary judgment to defendants on Ralph

5    Act claim where officer charged with "enforcement of the barricade" physically grabbed an animal

6    rights activist's hand, hit it against a vehicle, and held it for 15-20 minutes until additional officers

7    arrived).

8    As Defendants have shown there is no genuine dispute as to an essential element of a Ralph

9    Act cause of action—namely, whether violence was committed or threatened—the Court GRANTS

10   Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion as to

11   Ennis's Ralph Act claim arising out of the San Jose 2011 incident.

12   ### 3.  Fresno 2012

13   As to Fresno 2012, Ennis claims that he was standing on a public sidewalk in broad

14   daylight attempting to film animals over a wall when Circus employees threw ice and two sticks at

15   his camera.  Ennis Decl. ¶ 18.  Ennis testified that none of the objects were thrown directly at his

16   person, and that the only contact he experienced was when one of the two sticks ricocheted off a

17   nearby pillar and hit his shoulder.  Ennis Dep. at 228, 235.  The undisputed video evidence shows

18   that Ennis was standing behind a wall with his camera mounted atop a monopod so that he could

19   film over the wall and down into the area where he anticipated the animals would be brought.  *See*

20   Ex. A to Ennis Decl., Clips 11-13.  The clip from the perspective of Ennis's camera shows several

21   young male Circus performers in their uniforms (some of whom have their shirts off and are bare-

22   chested) looking up at the camera.  Ex. A to Ennis Decl., Clip 13.  An off-screen performer throws

23   a stick, which hits the side of Ennis's camera.  A few seconds later, the video shows a bare-chested

24   Circus performer obtaining a running start before tossing several pieces of ice in the camera's

25   general direction.  None of the ice contacts Ennis's camera.  Other than a few laughs, the scene was

26   largely quiet.  Ennis, who had standing behind a solid wall above where the Circus performers had

27

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

congregated, was hidden from their view.  Though neither physical injury nor property damage is a requirement, Ennis alleges none as a result of this incident.  *See* Ennis Dep. at 232, 235.

Once more, there is no evidence of violence or intimidation by threats of violence under the meaning of the Ralph Act.  The undisputed video evidence shows no "physical, destructive act" was ever perpetrated or threatened against Ennis.  *OSJ PEP Tenn.*, 2014 WL 4988070, at *5; *see also Bolbol I*, 754 F. Supp. 2d at 1102, 1117.  As Defendants have shown there is no genuine dispute as to an essential element of a Ralph Act cause of action—namely, whether violence was committed or threatened—the Court GRANTS Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion as to Ennis's Ralph Act claim arising out of the Fresno 2012 incident.

### 4.  Oakland 2012

As to Oakland 2012, the Court finds a genuine dispute as to whether Defendants intimidated Plaintiffs with threats of violence.  The undisputed video evidence, which lasts over six minutes, shows a nighttime animal walk that becomes contentious and almost chaotic for a few moments.

Toward the start of the video, the viewer sees an FEI employee, whom Campbell identifies as Billy Murray ("Murray"), walking next to Campbell and telling her at least six times to "get up on the sidewalk."  Ex. A to Campbell Decl. at 0:23-0:34.  After she refuses, Murray steps onto the pathway next to the street where the animals are walking and pulls the rope against Campbell's torso as she continues to walk.  *Id.* at 0:35-0:36.  Murray then returns to the street level and begins to raise his voice at Campbell, demanding that she "get on the sidewalk now, ma'am!"  *Id.* at 0:36-0:45.  In so doing, Murray can be seen using his body to direct Campbell onto the pathway, to which Campbell responds, "Don't fucking push me."  *Id.* at 0:40-0:41.  Recognizing that the situation has become tense between Campbell and Murray, Stuart approaches, raises an open palm to Murray as if to tell him to calm down, and tells Campbell in a normal speaking voice to "please get up on the sidewalk."  *Id.* at 0:45-0:48.  Stuart then tells Campbell again, "You gotta be up on here," referring to the rocky pathway adjacent to the street.  *Id.* at 0:52-0:53.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Another half-minute passes without incident, when Stuart tells Campbell, "I'll leave you
2  alone if you go up on the sidewalk." Ex. A to Campbell Decl. at 1:37-1:38.  Walking stride for
3  stride with Campbell, Stuart begins to use his larger frame to direct Campbell toward the pathway.
4  *Id.* at 1:39-1:40.  Campbell then says, "Get your body off of me, dude." *Id.* at 1:41-1:42.  Stuart
5  tells Campbell that she is "into the rope," to which Campbell replies, "That doesn't give you any
6  fucking right to put your body on me." *Id.* at 1:43-1:47.  Campbell next accuses Stuart of putting
7  his "hands on [her]," to which Stuart asks, "Did my hand go on you?" *Id.* at 1:50-1:52.
8  Acknowledging that Stuart did not in fact put his hands on her, Campbell tells him that he made
9  contact with her body. *Id.* at 1:53; *see also* Campbell Decl. ¶ 14 (stating "more accurately" that
10  Stuart "pushed his body against [hers]").  Campbell later testified that Stuart's "stomach [was]
11  protruding, and that's what he was pushing against [her]." Campbell Dep. at 113.  Stuart denies he
12  ever made contact with Campbell.  Stuart Dep. at 55.  The video, however, is ambiguous on this
13  point, and at the summary judgment stage the Court must draw all reasonable inferences in
14  Campbell's favor.
15    A minute or so after the interaction with Stuart, a different FEI employee is heard on the
16  video asking Campbell to get on the sidewalk.  Ex. A to Campbell Decl. at 3:16.  Campbell tells
17  the employee, "Get your hands off me!" to which the employee immediately replies, "My hands
18  are not on you." *Id.* at 3:17-3:20.  Campbell then responds, "Your body is pushing against me;
19  you're not allowed to do that." *Id.* at 3:20-3:22.  Another minute or so elapses when Stuart
20  reappears explaining to the spectators Stuart's understanding that the Baldwin Street entrance to
21  the arena is private property. *Id.* at 4:37-5:01.  In response, the spectators yell at FEI employees
22  that the entrance is open to the public, and the spectators begin to push through the rope past FEI
23  employees and security guards. *Id.* at 5:04-5:35.  The Court notes that the yelling and profanity in
24  the video do not come from FEI employees or security guards.
25    At one point, Stuart can be seen stepping in front of a spectator and using his larger
26  backside to block the person from proceeding. *Id.* at 4:53-4:55.  Stuart relents after a couple
27  seconds. *Id.* at 4:55.  During the "commotion," Campbell alleges that she was forced to jump over

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   a metal barricade in order to make her way through the entrance.  Campbell Dep. at 132-34.  Her

2   leap was not captured on video.  Campbell also claims that she sustained a bruise to her leg as a

3   result of the jump.  *Id.* at 134.  She testified, however, that even though the bruise lasted about a

4   month, she could not remember which leg she had bruised, and she took no pain medication for it.

5   *Id.* at 136-38.[6]  Eventually, the spectators were allowed to follow the procession through the

6   Baldwin Street entrance.  *See* Ex. A to Campbell Decl. at 5:50-6:15.

7           As to Ennis, the video evidence shows that Ennis was filming at the head of the Oakland

8   2012 elephant procession when Stuart and a security guard informed Ennis that the Baldwin Street

9   entrance was private property and that he could proceed no further.  Ex. A to Ennis Decl., Clip 8 at

10   0:07-0:13.  Ennis protests, argues that the entrance is "open to the public," and demands that Stuart

11   and the security guard "get out of [his] way."  *Id.* at 0:12-0:26.  As Ennis presses forward into

12   Stuart, Ennis yells, "Get off of me, man!"  *Id.* at 0:26-0:28.  Stuart replies, "I didn't touch you," but

13   Ennis repeats his demand for Stuart to "get off [him]."  *Id.* at 0:28-0:31.  At that moment, Stuart

14   reaches around Ennis with his right arm and appears to make contact with Ennis's body.  *Id.* at

15   0:32.  In his declaration, Ennis says, "[Stuart] reached over and hit me in the back," Ennis Decl.

16   ¶ 20, but Ennis testified later that Stuart "had his arms almost wrapped around [him]" before "he

17   reached over my side and . . . put his hand on my back," Ennis Dep. at 263.  Stuart denies ever

18   touching Ennis.  Stuart Dep. at 78-79.  Whether and to what extent Ennis may have been touched

19   by Stuart is a question of fact for the jury.

20           In light of this video evidence, as well as Plaintiffs' declarations and deposition testimony,

21   the Court finds a genuine dispute as to whether some of Defendants' actions toward Plaintiffs at the

22   Oakland 2012 incident amount to intimidation by threats of violence under the meaning of the

23   Ralph Act.  What's more, triable issues of fact exist as to whether Defendants' conduct was

24   motivated by Plaintiffs' political affiliation, the Ralph Act's second prong.  The Court agrees with

25   Plaintiffs that their animal rights activism and membership in HTE constitute a "political

26   affiliation" for purposes of the Ralph Act.  *See McCalden v. Cal. Library Ass'n*, 955 F.2d 1214,

27   ─────────────────────
        [6] Campbell testified that she took pictures of the bruise.  Campbell Dep. at 135.  Those
28   pictures were not included with Plaintiffs' motion papers, so the Court has not seen them.

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1220-21 (9th Cir. 1990) (concluding that California courts would interpret the Ralph Act's political

affiliation requirement "very broadly" to include Holocaust deniers), *superseded on other grounds*

*as stated in Harmston v. City & Cnty. of S.F.*, 627 F.3d 1273 (9th Cir. 2010); *Ennis v. City of Daly*

*City*, No. C-09-05318-MHP, 2011 WL 672655, at *8 (N.D. Cal. Feb. 16, 2011) (treating Ennis's

"animal rights activism" as a "political affiliation" for purposes of the Ralph Act).  Considering the

lengthy history of discord between HTE members, Plaintiffs included, and the Circus, *see Cuviello*

*v. City of Oakland*, 434 F. App'x 615, 617 (9th Cir. 2011) (explaining that the animal walk videos

reveal "friction between Plaintiffs and circus employees"), the Court finds a reasonable jury could

conclude that Defendants' alleged misconduct at the Oakland 2012 incident was motivated by

Plaintiffs' stance on animal rights, *see Bolbol II*, 2013 WL 257133, at *6 (denying summary

judgment on animal rights activists' Ralph Act claims because "a reasonable jury could look at

Plaintiffs' video evidence and conclude that Feld's employees knew that they engaged in their

protests because of their positions on animal rights").  Finally, triable issues of fact exist as to

whether Plaintiffs were harmed as a result of Defendants' conduct at the Oakland 2012 incident,

the third and fourth prongs under the Ralph Act.  *See, e.g.*, Ennis Decl. ¶ 23 (alleging "emotional

distress . . . as a result of the harassment by the Circus"); Campbell Decl. ¶ 15 (describing the

bruise to her leg).

     As both parties have failed to show the absence of a genuine dispute as to whether

Defendants' conduct at the Oakland 2012 incident violated the Ralph Act, the Court DENIES

Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion.

### 5.  San Jose 2012

     As to San Jose 2012, Ennis alleges that an unknown FEI employee "purposely walked into"

him while Ennis was standing alone on a public sidewalk attempting to film Circus animals over

the back gate of the arena.  Ennis Decl. ¶ 21.  The undisputed video evidence shows the employee

approach Ennis in broad daylight, extend his right arm out, and push Ennis's left shoulder.  Ex. A

to Ennis Decl., Clip 1.  The shove was of sufficient force to dislodge Ennis from where he had been

standing.  After the push, Ennis lowered his monopod and began filming the employee as he waited

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

for a security guard to open the gate.  The employee glances at Ennis while waiting, but it is unclear whether any words were exchanged.  When asked whether the employee had said anything to him, Ennis testified, "I recall him saying something about get out of my way."  Ennis Dep. at 311; *see also id.* at 324.  A short while later, the video shows the gate opening up and the employee walking inside.  Ennis testified that the security guard who had opened the gate said to Ennis, "Could you please move.  You are blocking the gate."  *Id.* at 324.  Even though Ennis disputes that he was blocking the gate, *see id.*, Ennis does not dispute that the guard told him so.  Once the gate was closed, the video shows Ennis walking toward a nearby squad car, presumably to inform the police about what had just taken place.

In light of the undisputed video evidence, as well as Ennis's declaration and deposition testimony, the Court finds a genuine dispute as to whether Defendants' actions toward Ennis at the San Jose 2012 incident constitute violence or intimidation by threats of violence under the meaning of the Ralph Act.  For the reasons discussed in Part III.B.4, *supra*, the Court also finds triable issues of fact as to whether Defendants' conduct caused Ennis harm and was motivated by Ennis's political affiliation as an animal rights activist.  *See Bolbol II*, 2013 WL 257133, at *6; Ennis Decl. ¶ 23.

As both parties have failed to show the absence of a genuine dispute as to whether Defendants' conduct at the San Jose 2012 incident violated the Ralph Act, the Court DENIES Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion.

**C.**     **Plaintiffs' Bane Act Claims**

The Bane Act provides a civil cause of action for "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of [California], has been interfered with, or attempted to be interfered with" through actual or attempted "threats, intimidation, or coercion."  Cal. Civ. Code § 52.1(a)-(b).  "The word 'interferes' as used in [§ 52.1] means 'violates.'"  *Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1064 (E.D. Cal. 2009) (quoting *Austin B.*, 149 Cal. App. 4th at 883).  Like the Ralph Act, the Bane Act "was adopted to stem a tide of hate crimes," but it is not limited to

1   such crimes. *Venegas v. Cnty. of L.A.*, 87 P.3d 1, 14 (Cal. 2004). That said, the statute "does not

2   extend to all ordinary tort actions." *Id.*

3          To prevail on a Bane Act claim, thus, Plaintiffs must make two showings: (1) Defendants

4   interfered with Plaintiffs' constitutional or statutory rights; and (2) that interference was

5   accompanied by actual or attempted threats, intimidation, or coercion. *See Venegas*, 87 P.3d at 14;

6   *Barsamian*, 597 F. Supp. 2d at 1064. Only if Plaintiffs can first establish that Defendants violated

7   a constitutional or statutory right can the Court consider whether such interference was the product

8   of threats, intimidation, or coercion.

9          Plaintiffs premise their Bane Act claims on a host of alleged statutory and constitutional

10   violations under California law. *See* FACC ¶ 109. These include violations of (1) section 3479 of

11   the California Civil Code; (2) Plaintiffs' paramount right to use public streets; (3) section 647c of

12   the California Penal Code; (4) section 1708 of the California Civil Code; (5) Article I of the

13   California Constitution; (6) section 43 of the California Civil Code; and (7) the Ralph Act. The

14   Court addresses each Bane Act predicate in turn.

## 1.   California Civil Code § 3479

16          Plaintiffs first allege Bane Act liability on the basis that their "right against unlawful

17   obstruction of the free use of any street or public property," as provided in section 3479 of the

18   California Civil Code, was violated. FACC ¶ 109(A). Section 3479 is a nuisance statute

19   prohibiting, inter alia, anything that "unlawfully obstructs the free passage or use, in the customary

20   manner, of . . . any public park, square, street, or highway." Cal. Civ. Code § 3479. As private

21   persons, Plaintiffs may maintain a public nuisance action only if they are "specially" injured. *Id.*

22   § 3493.

23          Plaintiffs, however, provide no authority suggesting that a breach of section 3479 may

24   serve as a predicate for Bane Act liability. In addition, Plaintiffs in their motion papers make no

25   reference to section 3479 as a basis for Bane Act liability. *See generally* Pls.' Mot.; Pls.' Opp.;

26   Pls.' Reply. In fact, the singular reference to section 3479 in Plaintiffs' briefing appears in their

27   reply supporting their partial summary judgment motion. *See* Pls.' Reply at 6. This fleeting

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    reference, moreover, appears in the context of Plaintiffs' battery claims and does not mention the

2    Bane Act. *See id.* The Court therefore concludes that Plaintiffs have abandoned section 3479 as a

3    predicate for Bane Act liability. *Ramirez*, 560 F.3d at 1026.

4        Even if the claim could serve as a Bane Act predicate and had not been abandoned,

5    summary judgment would still be appropriate because there is no evidence that Plaintiffs were

6    "specially" injured by Defendants' alleged conduct. Cal. Civ. Code § 3493. During the Oakland

7    2012 incident, the evidence shows that all members of the public, activists and non-activists alike,

8    were kept outside the rope barrier and blocked temporarily from entering the Baldwin Street

9    entrance. *See* Ex. A to Campbell Decl.; Voigt Dep. at 50. Plaintiffs, therefore, cannot show

10   special injury because there is no evidence that Plaintiffs were singled out such that only they were

11   prevented from passing through the gate. *See Bolbol II*, 2013 WL 257133, at *8 (granting

12   summary judgment on Bane Act claim predicated on section 3479 where HTE plaintiffs had failed

13   to "show that they were 'specially' injured by any of Feld's alleged nuisance actions"); *see also*

14   *Kempton v. City of L.A.*, 165 Cal. App. 4th 1344, 1349 (2008) (holding that if an injury caused by

15   blocking a public right-of-way "would be suffered by all members of the public," it would not

16   alone "constitute a special injury to appellants actionable for public nuisance").

17       Accordingly, the Court GRANTS summary judgment in favor of Defendants as to

18   Plaintiffs' Bane Act cause of action predicated on a violation of section 3479 of the California

19   Civil Code.

20              **2.   Paramount Right to Use Public Streets**

21       Plaintiffs next claim Bane Act liability on the basis that their "paramount right" as members

22   of the public "to use the public streets" was violated. FACC ¶ 109(B). "[A]s members of the

23   general public," Plaintiffs argue that they "had a pre-existing and paramount right to access the

24   public streets in each of the cities where the underlying incidents took place." Pls.' Opp. at 4-5.

25   Plaintiffs, however, cite no actual statutory or constitutional provision in support of this claim. Nor

26   do Plaintiffs cite any authority to suggest that Bane Act liability may be premised on a violation of

27   a person's right to use the public streets. *Cf. Bolbol II*, 2013 WL 257133, at *8 (granting summary

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  judgment on Bane Act claim where plaintiffs had failed to provide "any case law extending the

2  protections of Section 52.1 to any violation of Section 3479").

3        Even if such a violation could provide a basis for Bane Act liability, there is no evidence to

4  suggest that Plaintiffs' right to use the public streets was any greater than that of Defendants.  If

5  anything, the evidence shows that it was Defendants who enjoyed a superior right of access at the

6  time of the relevant incidents because they obtained municipal permits prior to staging the animal

7  walks.  There is no dispute, for example, that Defendants obtained a special events permit for the

8  Oakland 2012 walk, and that the walk was led by police escorts.  *See* Bailey Decl. ¶¶ 3-5; Bailey

9  Dep. at 46-54, 63-64, 85-88.  Plaintiffs, it is true, allege that Defendants exceeded the scope of the

10  permit by occupying the entirety of Baldwin Street and "deny[ing] Plaintiffs minimal space to walk

11  along the side of the street."  Pls.' Opp. at 6, 16-17.  Yet Plaintiffs offer no evidence to support

12  their assertion that Defendants violated permitting laws.  All Plaintiffs cite is Bailey's deposition

13  testimony indicating that he worked with the Oakland police department to obtain the special

14  events permit.  *See* Pls.' Opp. at 17 (citing Bailey Dep. at 46-49, 61-66).  Again, this testimony

15  suggests only that Defendants acted in accordance with law by obtaining a permit to hold the

16  animal walk.

17        Accordingly, the Court GRANTS summary judgment in favor of Defendants as to

18  Plaintiffs' Bane Act cause of action predicated on a violation of Plaintiffs' right to use the public

19  streets.  To the extent Plaintiffs moved for summary judgment on the issue, *see* Pls.' Mot. at 23-24,

20  the Court DENIES that motion.

21           **3.  California Penal Code § 647c**

22        Plaintiffs next allege Bane Act liability on the basis that their "right to be free from the

23  willful and malicious obstruction of [their] free movement" in public, as protected by section 647c

24  of the California Penal Code, was violated.  FACC ¶ 109(C).  Under this criminal statute, "[e]very

25  person who willfully and maliciously obstructs the free movement of any person on any street,

26  sidewalk, or other public place or on or in any place open to the public is guilty of a misdemeanor."

27  Cal. Penal Code § 647c.  To establish criminal malice under this law, Plaintiffs must show that

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Defendants acted with either (1) "a wish to vex, annoy, or injure" Plaintiffs; or (2) "an intent to do

2    a wrongful act" banned by law.  *Ramey v. Murphy*, 165 Cal. App. 3d 502, 510 (1985).

3            Plaintiffs offer no authority to suggest that a violation of section 647c—or any other

4    criminal statute, for that matter—may serve as a basis for Bane Act liability.  The Court, for its

5    part, has found none.  As the California courts have explained, "The essence of a Bane Act claim is

6    that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried

7    to or did prevent the plaintiff from doing something he or she had the right to do under the law or

8    to force the plaintiff to do something that he or she was not required to do under the law." *Austin*

9    *B.*, 149 Cal. App. 4th at 883.  Plaintiffs, however, appear to have invented a statutory right for

10   Bane Act purposes based on the fact that a criminal prohibition exists in California on the willful

11   and malicious obstruction of another's free movement.  As Plaintiffs have no civil cause of action

12   under section 647c, the Court declines to allow Plaintiffs to rely on it as a predicate for a separate

13   civil cause of action.  *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511

14   U.S. 164, 190 (1994) (explaining that courts are "quite reluctant to infer a private right of action

15   from a criminal prohibition alone"); *Johnson v. Wennes*, No. 08CV1798-L(JMA), 2009 WL

16   1228500, at *4 (S.D. Cal. May 5, 2009) ("It is well settled that a private citizen may not use the

17   courts as a means of forcing a criminal prosecution.").

18           Accordingly, the Court GRANTS summary judgment in favor of Defendants as to

19   Plaintiffs' Bane Act cause of action predicated on a violation of section 647c of the California

20   Penal Code.  The Court also DENIES Plaintiffs' summary judgment motion on this issue.

21                    **4.   California Civil Code § 1708**

22           Plaintiffs next claim Bane Act liability on the basis that their "right to be free from injury of

23   property and infringement upon rights" under section 1708 of the California Civil Code was

24   violated.  FACC ¶ 109(D).  Section 1708 provides that "[e]very person is bound, without contract,

25   to abstain from injuring the person or property of another, or infringing upon any of his or her

26   rights."  Cal. Civ. Code § 1708.  With respect to "injuring the person," this provision "requires

27   'harm' in the sense of detrimental physical changes to the body." *Duarte v. Zachariah*, 22 Cal.

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

App. 4th 1652, 1661 (1994).  This provision "states only a general principle of law" and does not

provide a private cause of action, *Ley v. State*, 114 Cal. App. 4th 1297, 1306 (2004), and Plaintiffs

cite no authority to suggest that Bane Act liability may be premised on a breach of section 1708.

In their motion papers, moreover, Plaintiffs make no reference to section 1708 as a basis for

Bane Act liability.  *See generally* Pls.' Mot.; Pls.' Opp.; Pls.' Reply.  In fact, Plaintiffs do not even

mention the provision.  The Court therefore concludes that Plaintiffs have abandoned section 1708

as a predicate for Bane Act liability.  *See Ramirez*, 560 F.3d at 1026.  With no argument in support

of this claim, the Court has no way of knowing which right or rights guaranteed by section 1708

Plaintiffs are alleging have been violated.  *See* FACC ¶ 109(D) (referencing vaguely "infringement

upon rights").  The Court declines to speculate.  *See Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th

Cir. 2007) ("A district court does not have a duty to search for evidence that would create a factual

dispute.").  To the extent Plaintiffs allege only "injury of property," FACC ¶ 109(D), the evidence

shows that there was no property damage resulting from Defendants' conduct, *see* Ennis Dep. at

232 (testifying that the stick hitting his camera during the Fresno 2012 incident caused no property

damage).

Accordingly, the Court GRANTS summary judgment in favor of Defendants as to

Plaintiffs' Bane Act cause of action predicated on a violation of section 1708 of the California

Civil Code.  *See Bolbol II*, 2013 WL 257133, at *8-9 (granting summary judgment as to HTE

plaintiffs' Bane Act claim predicated on section 1708); *Ennis*, 2011 WL 672655, at *7 (dismissing

Ennis's Bane Act claim predicated on section 1708).

### 5.  Article I of the California Constitution

Plaintiffs next allege Bane Act liability on the basis that their rights to free speech, peaceful

assembly, and liberty, as guaranteed by Article I of the California Constitution, were violated.

FACC ¶ 109(E)-(G).  Article I, Section 2(a) of the California Constitution provides: "Every person

may freely speak, write and publish his or her sentiments on all subjects, being responsible for the

abuse of this right.  A law may not restrain or abridge liberty of speech or press.  Cal. Const. art. I,

§ 2(a).  The Court, however, has already ruled that a violation of this provision requires "state

26

*United States District Court*
*For the Northern District of California*

1    action" and that "Defendants are not state actors under Article I, Section 2 of the California

2    Constitution."  ECF No. 155 at 9-13.  In declining to grant Plaintiffs leave to amend, the Court

3    decided that it would "not give Plaintiffs a seventh bite at the apple."  *Id.* at 13.  Now many months

4    later, the Court certainly will not allow an eighth.  *United States v. Smith*, 389 F.3d 944, 948 (9th

5    Cir. 2004) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining

6    an issue previously decided by the same court, or a higher court, in the same case." (internal

7    quotation marks omitted)).[7]  As there can be no violation of this provision, there can be no Bane

8    Act liability as a matter of law.  *See Venegas*, 87 P.3d at 14.

9          Plaintiffs' other constitutional predicates fare no better.  Article I, Section 3(a) guarantees

10   Californians "the right to instruct their representatives, petition government for redress of

11   grievances, and assemble freely to consult for the common good."  Cal. Const. art. I, § 3(a).  All

12   Plaintiffs allege here is that Defendants "have no right to restrict the right to speech or assembly in

13   streets and other public forums."  Pls.' Opp. at 7.  Plaintiffs make no argument—and there is no

14   evidence to support a claim—that Defendants actually violated their right to assemble freely.  What

15

16          [7] Plaintiffs have filed a Motion for Leave to File a Fifth Amended Complaint in order to

17   reassert liability under Article I, Section 2(a) of the California Constitution and to add Alex Petrov
     ("Petrov"), the animal superintendent at the Oakland 2012 incident, as a defendant.  ECF No. 216.

18   Plaintiffs, however, point to no "substantially different" evidence or "other changed
     circumstances" warranting the Court to revisit its prior rulings that Defendants are not state actors.

19   *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).  The Court also finds that
     amendment would be futile.  *See Mujica v. AirScan Inc.*, 771 F.3d 580, 593 n.8 (9th Cir. 2014).

20   Further, Plaintiffs have not provided "good cause" to add an additional defendant.  Fed. R. Civ. P.
     16(b)(4).  The "good cause" inquiry "primarily considers the diligence of the party seeking the

21   amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  Here,
     Plaintiffs' request to add Petrov as a defendant could have been made months ago.  *See* ECF No.

22   216 at 8-9.  Plaintiffs offer no persuasive explanation for the delay, and Defendants would be
     prejudiced by allowing amendment at this late date, months after the close of expert discovery.  For

23   these reasons, the Court DENIES Plaintiffs' Motion for Leave to File a Fifth Amended Complaint.
     *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (explaining that a

24   court properly denies leave to amend where there is "undue delay" or "repeated failure to cure
     deficiencies by amendments previously allowed").

25
            The Court also DENIES Defendants' Motion for Sanctions under 28 U.S.C. § 1927, *see*

26   ECF No. 221, because the Court is not convinced that Plaintiffs' counsel has acted with sufficient
     "recklessness" in filing the motion for leave to amend, *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir.

27   2010).

28

                                                    27

1    evidence does exist shows that Plaintiffs were allowed to assemble and protest, *see* Ex. A to

2    Campbell Decl. (video clip showing Oakland 2012 animal walk and protest).

3         Furthermore, Article I, Section 1 guarantees a right to "liberty." Cal. Const. art. I, § 1.  Yet

4    again, however, Plaintiffs fail to mention this provision in their briefing, let alone in connection

5    with their Bane Act claim.  There is no evidence to explain how the facts Plaintiffs allege give rise

6    to a violation of their right to liberty such that Bane Act liability may attach.  Simply alleging this

7    provision as a Bane Act predicate in their FACC is insufficient.  *See Bolbol II*, 2013 WL 257133,

8    at *10-11 (granting summary judgment on Bane Act claim where plaintiffs "failed to explain how

9    the facts they allege give rise to violations of [Article I, Section 1]").

10        Accordingly, the Court GRANTS summary judgment in favor of Defendants as to

11   Plaintiffs' Bane Act cause of action predicated on a violation of Plaintiffs' rights under Article I of

12   the California Constitution.  To the extent Plaintiffs moved for summary judgment on the issue, *see*

13   Pls.' Mot. at 18, 23-24, the Court DENIES that motion.

14                    **6.  California Civil Code § 43**

15        Plaintiffs next claim Bane Act liability on the basis that their "right to be free from bodily

16   harm," as secured by section 43 of the California Civil Code, was violated.  FACC ¶ 109(H).

17   Section 43 guarantees, inter alia, a person's "right of protection from bodily restraint or harm."

18   Cal. Civ. Code § 43.  "The phrase 'right of protection from bodily restraint or harm' refers simply

19   to an individual's right to be free from physical attack or the threat thereof." *Atilano*, 2008 WL

20   4078809, at *6 (quoting *People v. Lashley*, 1 Cal. App. 4th 938, 951 (1991)) (internal quotation

21   marks omitted).  Plaintiffs provide no authority suggesting that section 43 may serve as a predicate

22   for Bane Act liability.  The Court, however, has found several cases in which plaintiffs asserted

23   Bane Act liability based on section 43 and courts elected not to dismiss those claims as a matter of

24   law.  *See, e.g.*, *Medrano v. Kern Cnty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1015 n.2 (E.D. Cal.

25   2013); *see also Bolbol v. City of Daly City*, No. C-09-1944 EMC, 2011 WL 3156866, at *7 (N.D.

26   Cal. July 26, 2011) (denying defendants' "motion to dismiss the § 52.1 claim based on a violation

27   of § 43").  The Court will therefore allow Plaintiffs to proceed on this theory of Bane Act liability.

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    For the reasons stated in Part III.B., *supra*, the Court finds a triable issue of fact as to

2    whether Defendants' conduct at the Oakland 2012 and San Jose 2012 incidents violated Plaintiffs'

3    right to be free from bodily harm or the threat thereof under section 43.  *See* Ex. A to Campbell

4    Decl.; Ex. A to Ennis Decl., Clips 1, 8-10.  The Court also finds a genuine dispute as to whether

5    that alleged violation of section 43 was accompanied by actual or attempted threats, intimidation,

6    or coercion, the Bane Act's second prong.  The Court finds no genuine dispute regarding the

7    Oakland 2010, San Jose 2011, and Fresno 2012 incidents.  The undisputed video evidence of those

8    three incidents provides no basis for a reasonable jury to conclude that Plaintiffs' "right to be free

9    from physical attack or the threat thereof" was violated.  *Atilano*, 2008 WL 4078809, at *6

10    (internal quotation marks omitted); *see* Ex. C to Campbell Decl.; Ex. A to Ennis Decl., Clips 6, 11-

11    13.

12    Accordingly, as both parties have failed to show the absence of a genuine dispute as to

13    whether Defendants' conduct at the Oakland 2012 and San Jose 2012 incidents violated the Bane

14    Act by way of section 43 of the California Civil Code, the Court DENIES Defendants' summary

15    judgment motion and DENIES Plaintiffs' summary judgment motion with respect to those

16    incidents.  The Court GRANTS Defendants' summary judgment motion and DENIES Plaintiffs'

17    summary judgment motion with respect to the Oakland 2010, San Jose 2011, and Fresno 2012

18    incidents.

19    ### 7.   California Civil Code § 51.7 (Ralph Act)

20    Finally, Plaintiffs argue in their summary judgment motion that Defendants' alleged

21    violation of the Ralph Act provides a basis for liability under the Bane Act.  *See* Pls.' Mot. at 15,

22    17.  This argument fails because Plaintiffs never pled the Ralph Act as a predicate for liability

23    under the Bane Act.  *See* FACC ¶ 109; *see also Bergman v. Bank of Am.*, No. C-13-00741 JCS,

24    2013 WL 5863057, at *20 (N.D. Cal. Oct. 23, 2013) ("Because this assertion is not in the

25    Complaint, the Court need not address it."); *Lavenue v. Edmunds*, No. CV 10-1479-PHX-DGC,

26    2010 WL 2838383, at *1 (D. Ariz. July 20, 2010) (declining to reach a basis for federal question

27    jurisdiction because "this claim is not in the complaint").  Even if Plaintiffs had so pled, they

28

Case Nos.: 12-CV-04233-LHK; 13-CV-00233-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1  provide no authority to suggest that the Ralph Act may serve as a Bane Act predicate.  What

2  authority the Court has found suggests the opposite.  *See Bolbol II*, 2013 WL 257133, at *11

3  (granting summary judgment because "the court does not believe that a violation of Section 51.7

4  can be the basis for a Section 52.1 claim").

5       Accordingly, the Court GRANTS summary judgment in favor of Defendants as to

6  Plaintiffs' Bane Act cause of action predicated on a violation of section 51.7 of the California Civil

7  Code.  The Court also DENIES Plaintiffs' summary judgment motion on this issue.

8       **8.  Conclusion**

9       Because the Court finds triable issues of fact that Defendants' conduct at the Oakland 2012

10  and San Jose 2012 incidents violated the Bane Act by way of section 43 of the California Civil

11  Code, the Court DENIES Defendants' summary judgment motion and DENIES Plaintiffs'

12  summary judgment motion as to the section 43 predicate only and only with respect to the Oakland

13  2012 and San Jose 2012 incidents.  The Court GRANTS summary judgment in favor of Defendants

14  as to each of Plaintiffs' remaining Bane Act causes of action, and DENIES Plaintiffs' summary

15  judgment motion with respect to the remaining Bane Act causes of action asserted in Plaintiffs'

16  motion.

17       **D.       Plaintiffs' Battery Claims**

18       "To prevail on a claim of battery under California law, a plaintiff must establish that: (1)

19  the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or

20  offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or

21  offended by defendant's conduct; and (4) a reasonable person in plaintiff's situation would have

22  been offended by the touching."  *Avina v. United States*, 681 F.3d 1127, 1130-31 (9th Cir. 2012).

23  It is well-settled under California law "that 'the least touching' may constitute battery."  *People v.*

24  *Mansfield*, 200 Cal. App. 3d 82, 88 (1988).  "In other words, *force* against the person is enough; it

25  need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any

26  mark."  *Id.*

27

28

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    For the reasons stated in Part III.B, *supra*, the Court finds a triable issue of fact as to

2    whether Defendants' conduct at the Oakland 2012 and San Jose 2012 incidents amounted to battery

3    against Campbell and Ennis under California law.  *See* Ex. A to Campbell Decl.; Ex. A to Ennis

4    Decl., Clips 1, 8-10.  The Court finds no genuine dispute regarding the Oakland 2010, San Jose

5    2011, and Fresno 2012 incidents.  The undisputed video evidence of those three incidents provides

6    no basis for a reasonable jury to conclude that Defendants touched Plaintiffs (or caused them to be

7    touched) in an objectively offensive manner.  *See* Ex. C to Campbell Decl.; Ex. A to Ennis Decl.,

8    Clips 6, 11-13.

9        As both parties have failed to show the absence of a genuine dispute as to whether

10   Defendants' conduct at the Oakland 2012 and San Jose 2012 incidents constituted battery under

11   California law, the Court DENIES Defendants' summary judgment motion and DENIES Plaintiffs'

12   summary judgment motion with respect to those incidents.  The Court GRANTS Defendants'

13   summary judgment motion and DENIES Plaintiffs' summary judgment motion with respect to the

14   Oakland 2010, San Jose 2011, and Fresno 2012 incidents.

15       **E.      Campbell's Assault Claim**

16       "Under California law, to prevail on the tort of assault, the plaintiff must establish that: (1)

17   the defendant threatened to touch the plaintiff in a harmful or offensive manner; (2) it reasonably

18   appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not

19   consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct

20   was a substantial factor in causing the plaintiff's harm."  *Avina*, 681 F.3d at 1130.  As with battery,

21   "[p]hysical injury is not a required element" of assault.  *Kiseskey v. Carpenters' Trust for S. Cal.*,

22   144 Cal. App. 3d 222, 232 (1983).

23       For the reasons stated in Part III.B, *supra*, the Court finds a triable issue of fact as to

24   whether Defendants' conduct at the Oakland 2012 incident amounted to assault against Campbell

25   under California law.  As both parties have failed to show the absence of a genuine dispute as to

26   whether Defendants' conduct at the Oakland 2012 incident constituted assault under California

27

28

31

**United States District Court**
For the Northern District of California

1    law, the Court with respect to that incident DENIES Defendants' summary judgment motion and

2    DENIES Plaintiffs' summary judgment motion.

3            Regarding the Oakland 2010 incident, the only other incident involving Campbell, the

4    undisputed video evidence reveals no threat that Campbell would be touched in a harmful or

5    offensive manner on account of the randomly flashing green light.  *See* Ex. C to Campbell Decl.

6    With respect to the Oakland 2010 incident, the Court GRANTS Defendants' summary judgment

7    motion and DENIES Plaintiffs' summary judgment motion.

8       **F.      Campbell's UCL Claim**

9            "By proscribing any unlawful business practice, the UCL borrows violations of other laws

10   and treats them as unlawful practices that the unfair competition law makes independently

11   actionable."  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011) (alteration and

12   internal quotation marks omitted).  "Virtually any law federal, state or local can serve as a

13   predicate for an action under [the UCL]."  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App.

14   4th 700, 718 (2001).  "If a plaintiff cannot state a claim under the predicate law, however, [the

15   UCL] claim also fails."  *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO SHX, 2014 WL

16   4359193, at *11 (C.D. Cal. Sept. 3, 2014) (internal quotation marks omitted).  To establish

17   standing under the UCL, a plaintiff must demonstrate that she "suffered injury in fact and . . . lost

18   money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; *see*

19   *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-LHK, 2014 WL 27527, at *7 (N.D. Cal.

20   Jan. 2, 2014).

21           To establish standing under the UCL, Campbell has alleged that Defendants' conduct in

22   general forced her to "incur substantial additional expense in order to purchase memory cards."

23   FACC ¶ 94.  During discovery, Defendants asked Campbell for details about "the additional

24   memory cards" referenced in the complaint.  ECF No. 208-2, Campbell Third Supplemental

25   Response to FEI's Special Interrogatories at 4.  In response, Campbell listed four different types of

26   memory: (1) eighteen Mini DVDs; (2) twenty Mini DV tapes; (3) one 2GB SD card; and (4) two

27   32GB SD cards.  *Id.* at 5-6.  She estimated the total cost of these items to be $235.35.  *Id.* at 6.

28

United States District Court
For the Northern District of California

1    Later, at her deposition, Campbell testified that the media listed in her interrogatory answer and the

2    $235.35 figure actually referred to *everything* she had in her possession, not just the "additional"

3    cards she claimed she had to purchase because of Defendants' alleged "harassment."  Campbell

4    Dep. at 156-58.  When asked to estimate the amount of additional expenditures she was claiming,

5    Campbell declined to do so at first.  *Id.* at 158.  Campbell then testified that "maybe one-fourth" of

6    the twenty mini DV tapes she had purchased were a result of Defendants' allegedly harassing

7    conduct.  *Id.* at 158-59.  The Court finds this evidence sufficient to create a triable issue of fact as

8    to whether Campbell paid extra money for memory cards as a result of Defendants' conduct at the

9    Oakland 2012 incident.

10          As to the substance of Campbell's UCL "unlawful" claim, the Court has already found a

11   genuine dispute regarding whether the Bane Act (by way of section 43 of the California Civil Code

12   only) and the Ralph Act were violated with respect to Defendants' conduct at the Oakland 2012

13   incident.  As a result, the Court must find a triable issue as to whether the UCL was violated on the

14   basis of those predicate offenses only.  The Court therefore DENIES Defendants' summary

15   judgment motion as to Campbell's UCL claim with respect to the Oakland 2012 incident.

16          As to the Oakland 2010 incident, the only other incident involving Campbell, the Court has

17   already granted summary judgment in Defendants' favor.  Because there is no violation of a

18   predicate law, the Court GRANTS Defendants' summary judgment motion with respect to

19   Campbell's UCL claim regarding the Oakland 2010 incident.  *See Stokes*, 2014 WL 4359193, at

20   *11 ("If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also

21   fails." (internal quotation marks omitted)).

22   **IV.      CONCLUSION**

23          For the foregoing reasons, the Court rules on the parties' summary judgment motions as

24   follows:

25          •      The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' cause

26                 of action arising out of Article I, Section 2(a) of the California Constitution;

27

28
                                                      33

1    • The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' cause

2       of action arising out of section 527.6 of the California Code of Civil Procedure;

3    • The Court GRANTS summary judgment in favor of Defendants as to Campbell's cause

4       of action for IIED;

5    • The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Ralph

6       Act cause of action arising out of the Oakland 2010, San Jose 2011, and Fresno 2012

7       incidents;

8    • The Court DENIES summary judgment for both parties as to Plaintiffs' Ralph Act

9       cause of action arising out of the Oakland 2012 and San Jose 2012 incidents;

10   • The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane

11      Act cause of action predicated on a violation of section 3479 of the California Civil

12      Code;

13   • The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane

14      Act cause of action predicated on a violation of the right to use the public streets;

15   • The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane

16      Act cause of action predicated on a violation of section 647c of the California Penal

17      Code;

18   • The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane

19      Act cause of action predicated on a violation of section 1708 of the California Civil

20      Code;

21   • The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane

22      Act cause of action predicated on violations of Article I of the California Constitution;

23   • The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane

24      Act cause of action predicated on a violation of section 43 of the California Civil Code

25      with respect to the Oakland 2010, San Jose 2011, and Fresno 2012 incidents;

26

27

28

34

United States District Court
For the Northern District of California

- The Court DENIES summary judgment for both parties as to Plaintiffs' Bane Act cause of action predicated on a violation of section 43 of the California Civil Code with respect to the Oakland 2012 and San Jose 2012 incidents;

- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of the Ralph Act;

- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' battery cause of action arising out of the Oakland 2010, San Jose 2011, and Fresno 2012 incidents;

- The Court DENIES summary judgment for both parties as to Plaintiffs' battery cause of action arising out of the Oakland 2012 and San Jose 2012 incidents;

- The Court GRANTS summary judgment in favor of Defendants as to Campbell's assault cause of action arising out of the Oakland 2010 incident;

- The Court DENIES summary judgment for both parties as to Campbell's assault cause of action arising out of the Oakland 2012 incident;

- The Court GRANTS summary judgment in favor of Defendants as to Campbell's UCL claim arising out of the Oakland 2010 incident; and

- The Court DENIES summary judgment for both parties as to Campbell's UCL claim arising out of the Oakland 2012 incident.

The Court also GRANTS Plaintiffs' request for judicial notice, STRIKES any references in the FACC to Dennis, Gillet, and Gorman, DENIES Plaintiffs' Motion for Leave to File a Fifth Amended Complaint, and DENIES Defendants' Motion for Sanctions.

**IT IS SO ORDERED.**

Dated: December 15, 2014

LUCY H. KOH
United States District Judge

35